## HALDIMAN *v.* TAFT.

### Opinion delivered January 22, 1912.

1. EXCHANGE OF PROPERTY—WHEN RESCINDED FOR FRAUD.—An exchange of land for corporate stock will be rescinded where the owner of the land fraudulently represented that the corporation owned a stock of goods worth $35,000, and owed about $5,000, and that the capital stock amounted to $16,000, and that the stock was worth par, when he knew or ought to have known that the corporation was insolvent. (Page 47.)

2. CANCELLATION OF INSTRUMENTS—PARTIAL RESCISSION—Where the grantor of land under two different contracts sold undivided parts thereof to two persons, and for convinence made only one deed, and one of the contracts was induced by fraudulent representations of the grantee, the deed may be set aside as to that grantee alone. (Page 48.)

3. MORTGAGES—WHEN MORTGAGEE NOT INNOCENT PURCHASER.—One who accepts a mortgage as security for an antecedent debt will not be deemed an innocent purchaser though the mortgage recites that it was given to secure the payment of a note, if he fails to produce the note or to show that it is a negotiable instrument. (Page 49.)

Appeal from Drew Chancery Court; *Zachariah T. Wood,* Chancellor; affirmed.

*Williamson & Williamson,* for appellant.

1. The court erred in cancelling the Fred Hert mortgage. He, having taken the mortgage for a preexisting indebtedness and without notice of the alleged equities of the appellee, is in the position of an innocent purchaser for value without notice, and is protected. 96 Ark. 105.

2. The court was without authority to decree a partial cancellation of a deed wherein Haldiman and another were grantees as tenants in common, leaving the deed to stand unaltered as to the other grantee. Under the testimony the contract was entire and indivisible, and could not be rescinded except *in toto.* 6 Cyc. 339, and notes; 1 Green's Digest, Am. St. Rep. 790, cases cited; 129 Mo. 220; 6 Cyc. 322.

3. The evidence to justify a court of equity in cancelling an executed contract on the ground of fraud must be clear and convincing. It will not grant such relief upon a probability, nor even upon a mere preponderance of evidence. 6 Cyc. 336, note 47; 112 Ala. 576; 19 Ark. 522, 528.

*R. W. Wilson* and *James C. Knox,* for appellee.

1. From the evidence before the chancellor the conclusion is unavoidable that Haldiman was guilty of such fraud as to justify cancellation or rescission. The chancellor so found, and the law sustains his finding. 20 Cyc. 55, 56; *Id.* 58; *Id.* 75; 71 Ark. 305; 138 S. W. 1003; 135 S. W. 458.

2. Hert does not stand in the position of a *bona fide* purchaser for value. His mortgage was given to secure a pre-existing debt, and no new consideration is shown. He is not protected against prior equities. 27 Ark. 560; 2 Pom. Eq. (3 ed.) § § 748, 749; 27 Cyc. 1191; 5 Cyc. 719.

The chancellor's finding on this question, as also on the question of Haldiman's fraud, will not be disturbed unless contrary to the clear preponderance of the evidence. 77 Ark. 305; 75 Ark. 52; 72 Ark. 67; 74 Ark. 336; 95 Ark. 523; *Id.* 482.

3. Hert's testimony as to extension of time of payment, the only evidence tending to show a change of his position by a cancellation of the mortgage, was inadmissible because contradictory of the language of the mortgage, and because the note, the best evidence, was not produced, though in his possession at the time the deposition was taken. Parol testimony is never admissible to vary or contradict a written instrument. 94 Ark. 130; 83 Ark. 163, 105, 241, 283; 95 Ark. 131.

McCULLOCH, C. J. The plaintiff, C. T. Taft, owned a tract of land in Drew County, Arkansas, containing 280 acres, and on January 8, 1910, conveyed an undivided fourth thereof to John C. Haldiman, one of the defendants, in exchange for 24 shares, of the face value of $2,400, of the capital stock of the People's Clothing & Shoe Company, a mercantile corporation of California, Missouri. He also paid said defendant the sum of $750 as consideration for said exchange.

On the same date he exchanged the other three-fourths interest in said land with one Reidy for other lands in the State of Missouri, paying Reidy the sum of $750 as a part of

the consideration for the exchange, and for convenience he executed one deed to Haldiman and Reidy conveying said lands to them. At that time plaintiff resided in Drew County, Arkansas, and defendant Haldiman resided at California, Missouri. A short time thereafter Haldiman mortgaged his interest in the land to Fred Hert, to secure the payment of an antecedent indebtedness owing by Haldiman to Hert. Subsequently plaintiff instituted this action in the chancery court of Drew County against Haldiman and Hert to cancel his said conveyance to Haldiman and the mortgage from Haldiman to Hert, on the alleged ground that his deed was procured by fraudulent misrepresentations concerning the value of said capital stock of the Missouri corporation.

The defendants filed separate answers, each denying the allegations of fraud, and also denying that defendant Hert had any knowledge of fraud in the transaction between plaintiff and Haldiman.

The chancellor found in favor of the plaintiff on the allegations of fraud, and also found that the defendant Hert was not an innocent purchaser for value, and rendered a decree in plaintiff's favor cancelling the deed to Haldiman and the mortgage to Hert.

It is earnestly insisted that the testimony is insufficient to sustain the charges of fraudulent misrepresentations concerning the value of the stock. After a careful examination of the testimony, we are of the opinion, however, that the finding of the chancellor was correct, and that it should not be disturbed. The law as to this branch of the case is too well settled for further discussion, and we merely refer to the recent case of *Hunt* v. *Davis*, 98 Ark. 44, for a full discussion of the law applicable to this branch of the case. The Missouri corporation went into bankruptcy about two months after the execution of the conveyance, and the proof was absolutely conclusive that it was insolvent at that time, and must have been grossly insolvent at the time of plaintiff's conveyance to Haldiman. The trade between the parties was made in Drew County, Arkansas, the plaintiff never having been to California, Missouri, and knowing nothing about the value of the stock except what was told him by Haldiman. He testified that Haldiman told him that the corporation owned a stock of merchandise

worth $35,000, and that it owed about $5,000 the capital stock being $16,000. He states that Haldiman told him that the stock was worth $1.06 on the dollar of its face value. Another witness testified that Haldiman said that the stock was worth dollar for dollar *to him.* Haldiman admitted that he made this last statement to plaintiff. Now, if he made the statement to plaintiff, even as qualified by himself and the other witness, he must be taken to have meant that it was worth par value, because, if it was worth that to him, that could only be reasonably understood to mean that that was its true value. If he made that representation, and knew, or ought to have known, that the stock was not worth that much, he was guilty of making a false representation, which, if relied on by the other party, became the inducement for the trade. There is evidence that he was treasurer of the corporation, and had actual knowledge of its financial condition. But, even if he was without actual knowledge on the subject, he occupied a position which was tantamount to holding himself out as having such knowledge, and it is unimportant whether he did possess the knowledge or not Under those circumstances, it was his duty to have informed himself before making any statement to a party with whom he dealt.

A short time before this trade was made, plaintiff's brother moved to California, Missouri, and purchased some of the capital stock of the corporation. It is insisted that plaintiff relied upon his brother's knowledge, and not upon the alleged misrepresentations of Haldiman. We are of the opinion, however, that the plaintiff relied upon Haldiman's statements, and that they were the inducing cause of the bargain.

It is further insisted by learned counsel that, as the deed was made to Haldiman and Reidy conveying all of plaintiff's interest in the property to them, a portion of the conveyance can not be rescinded. They invoke the rule that there can be no rescission of a portion of a contract, and insist that there can not be, in equity, a partial cancellation of a deed for fraud alleged to have been perpetrated upon the grantor by one of the grantees. The evidence shows, however, that, while the deed was made to Haldiman and Reidy jointly, it represented separate bargains for separate and distinct considerations. Under those circumstances, we do not think that the question

of partial rescission arises. The whole transaction, so far as it relates to the conveyance to Haldiman, is involved, and not the transaction with Reidy.

Finally, it is contended that the proof is insufficient to sustain the finding of the chancellor that Hert was not an innocent purchaser for value.

The evidence is undisputed that the mortgage to Hert was executed for the purpose of securing the payment of an antecedent indebtedness. Hert in his answer alleges that Haldiman executed a note for $1,500, the amount of the debt, and also this mortgage for the purpose of securing the same, and delivered them to him in payment of said debt. He also testified that Haldiman executed the note to him, and that he agreed to extend the time of payment in consideration of his giving security. The mortgage is exhibited with the pleadings, and recites the fact that it was given to secure the payment of a note for $1,500. The note is not exhibited, and it does not appear anywhere, either in the pleadings or in the testimony, that the note was in the form of a negotiable instrument. This court held in *Johnson v. Graves*, 27 Ark. 560, that where a creditor takes a mortgage merely as security for antecedent indebtedness, without advancing any new consideration, he is not entitled to the protection accorded a *bona fide* purchaser for value as against prior liens or equities. In a long line of cases this court has held that one who takes negotiable paper before maturity, in payment of or as security for an antecedent debt, and without notice of any defect, receives it in due course of business, and is a holder for value and free from any equities of the maker or indorser. *Tabor v. Merchants Nat. Bank*, 48 Ark. 458; *Hamiter v. Brown*, 88 Ark. 97; *Exchange Nat. Bank v. Coe*, 94 Ark. 387; *White-Wilson-Drew Co. v. Egelhoff*, 96 Ark. 105. In those cases we recognized the conflict in the authorities on that question, but followed, for the sake of uniformity as much as for any other reason, the decisions of the Supreme Court of the United States on that question, particularly the case of *Railroad Company v. National Bank*, 102 U. S. 14, which was cited in several of our cases. It will be observed that the Federal cases base this doctrine entirely upon the fact that negotiable paper is controlled by the law merchant, and that, in order to give it such stability as the

law contemplates, the protection should be extended to a holder who receives the paper either in payment of or as collateral security for an antecedent debt. Mr. Justice Harlan, in his opinion in the case just cited, quoted with approval a statement of Judge Story in the case of *Swift* v. *Tyson*, 16 Peters, 1, which was said to be *obiter* but which was subsequently adhered to as the law on that subject. That learned judge and textwriter said:

"And why, upon principle, should not a preexisting debt be deemed such a valuable consideration? It is for the benefit and convenience of the commercial world to give as wide an extent as practicable to the credit and circulation of negotiable paper, that it may pass, not only as security for new purchases and advances made upon the transfer thereof, but also in payment of and as security for preexisting debts. The creditor is thereby enabled to realize or to secure his debt, and thus may safely give a prolonged credit, or forbear from taking any legal steps to enforce his rights. The debtor, also, has the advantage of making his negotiable securities of equivalent value to cash. But establish the opposite conclusion, that negotiable paper can not be applied in payment of or as security for preexisting debts, without letting in all the equities between the original and antecedent parties, and the value and circulation of such securities must be essentially diminished, and the debtor driven to the embarrassment of making a sale thereof, often at a ruinous discount, to some third person, and then by circuity to apply the proceeds to the payment of his debts. What, indeed, upon such a doctrine would become of that large class of cases where new notes are given by the same or by other parties, by way of renewal or security to banks, in lieu of old securities discounted by them which have arrived at maturity? Probably more than one-half of all bank transactions in our country, as well as those of other countries, are of this nature. The doctrine would strike a fatal blow at all discounts of negotiable securities for preexisting debts." See also note to *Empire State Trust Co.* v. *Fisher*, 3 Am. & Eng. Ann. Cas. 393, where the authorities are collected which fully sustain us in the conclusion we reach.

The reasoning upon which this rule is based can not be extended to paper not in the form of a negotiable instrument,

for to do so would be to ignore the reasons upon which the rule is based and would put us in conflict with the early announcement by this court on that subject. Neither the evidence nor the pleadings in this case show that a negotiable instrument is involved. It being shown that defendant Hert accepted the mortgage as security for an antecedent debt, it devolved upon him to produce the instrument or to prove in some way that it was a negotiable instrument. Otherwise he has not clothed himself with the protection due an innocent purchaser for value.

Upon the whole case we are of the opinion that the chancellor's decision was correct, and the decree is therefore affirmed.