## MILES *v.* DODSON.

### Opinion delivered February 26, 1912.

1. BILLS AND NOTES—WHEN HOLDER PROTECTED.—Where the holder of negotiable paper acquired it after maturity from one who became a *bona fide* holder for value and without notice before maturity, he is then protected upon the strength of his transferrer's title. (Page 425.)

2. SAME—BONA FIDE HOLDER.—One who takes negotiable paper before maturity in payment or as security for an antecedent debt, and without notice of any defect, receives it in due course of business, and is a holder for value free from any equities of the maker or indorser. (Page 426.)

3. SAME—TO WHOM PAYMENT SHOULD BE MADE.—The maker of a promissory note can make a valid payment only to the holder of the note; and if he makes a payment to one not at the time the holder of it, he does so at his own risk. (Page 427.)

4. APPEAL AND ERROR—CONCLUSIVENESS OF MASTER'S FINDINGS.—Findings of fact of a consent master are as conclusive as the findings of a jury. (Page 427.)

Appeal from Union Chancery Court; *James M. Barker*, Chancellor; affirmed.

*R. G. Harper*, for appellant.

1. Dodson acquired the note after maturity. It was dishonored and put the purchaser on notice of all defenses. 38 Ark. 127; 30 *Id.* 590.

2. Appellee had no legal right, with his father, to negotiate the note to the Ouachita Valley Bank. 179 Ill. 599; 46 L. R. A. 753.

· *W. E. Patterson*, for appellee.

1. Appellee is a *bona fide* holder, in due course of business, without notice, before maturity and for value. 41 Ark. 418; 42 *Id.* 22; 65 *Id.* 204; 94 *Id.* 387; 7 Cyc. 932, 928, 938; 65 Conn. 544; 1 Dan. Neg. Inst. p. 776, 801; 46 L. R. A. 784.

2. Payment to one not the legal holder of the note and without authority to collect avails nothing as a defense. 21 Ark. 393; 89 *Id.* 448; 55 *Id.* 347; 75 *Id.* 170; 1 Dan. Neg. Inst. 758; 46 L. R. A. 769; 86 Ark. 439.

FRAUENTHAL, J. This was an action upon a note originally instituted in the circuit court by C. W. Dodson against F. W. Miles and the other makers thereof. The note is a negotiable instrument for $575.25, dated August 20, 1903, and due January 1, 1905, payable to the order of E. H. Smith. The plaintiff claimed that he was an innocent purchaser of the note. The defendants alleged payment of the note, and that plaintiff had acquired it after its maturity and after notice that it had been paid. They also alleged that the note had been assigned by said E. H. Smith to Dodson & Sons, a partnership, of which the plaintiff was a member, as collateral to secure a principal note executed by said Smith to said partnership; that a great many other notes and shares of stock had at the same time been transferred to said partnership as collateral to secure said principal note, and that the partnership had collected on the other collateral a sufficient amount to pay the principal note. Without objection, the cause was transferred to the chancery court, and, by the consent of all parties, that court appointed a master to make and state an account of all payments which had been made and all sums which had been collected on all said collateral notes and shares of stock which had been transferred by said Smith to Dodson & Son, and also of all payments made by the defendants upon the note

involved in this suit.   Testimony of a number of witnesses was taken by the master relative to these matters, and he made a report in which he set out the various notes and shares of stock which had been transferred by said Smith to Dodson & Son to secure his principal note to them, and also the various sums which had been collected thereon.   From this he found that there was still due and unpaid on said note executed by Smith to Dodson & Son the sum of $1,781.89.   The master further found that in March, 1904, the defendant Miles had paid to said Smith the full amount of the note herein sued on.   He thereupon reported that plaintiff was not entitled to recover on said note.   The chancellor approved the findings of fact made by the master, but overruled the conclusion of law at which he arrived.   He found that the plaintiff was an innocent purchaser of the note before its maturity, and thereupon rendered judgment in his favor for the amount thereof.

It appears that on or about September 1, 1903, said E. H. Smith became or was then, indebted to Dodson & Son in the sum of $7,000, and executed his note therefor to them.   In order to secure the payment of that note, he transferred to Dodson & Son on the same day a number of notes of various parties which were payable to him and also some shares of stock in two or more corporations.   Amongst the notes thus transferred as collateral to Dodson & Son was the note upon which this suit is instituted.   At the time of making said transfers, Smith also executed a written power by which he authorized said Dodson & Son, or their assigns, to sell said collaterals, or any of them, upon default being made in the payment of said principal note executed by him to them.   The testimony tended further to prove that shortly afterwards Dodson & Son placed these collateral notes in the hands of a firm of lawyers for collection.   These attorneys testified that they used every reasonable effort to collect these notes and succeeded in collecting about $1,000 thereon by August, 1904.   On September 1, 1904, Dodson & Son had a settlement with said Smith of the collections which had been made by them upon the various collateral notes, which, being credited upon said principal note, left a balance due thereon of $6,000.   In renewal of the balance thus found due upon said note, Smith, on said day, executed to Dodson & Son his note for $6,000,

due January 1, 1905. The note herein sued on, which had been transferred as collateral to secure the payment of the original note for $7,000, was still retainned by Dodson & Son as collateral to secure the payment of the renewal note for $6,000. Some of the other collateral notes were also retained by them, and other notes were transferred to them as collateral for the payment of the renewal note. About that time Dodson & Son borrowed from, or became indebted to, the Ouachita Valley Bank in the sum of $4,346.62, and executed their note to it therefor, and in order to secure same transferred to the bank the said note for $6,000 executed to them by Smith, and also the collateral notes attached thereto, amongst which was the note herein sued on. Later, and in February, 1905, Dodson & Son having made default in the payment of their note to the bank, the collateral notes were sold by the bank under the power granted by Smith to Dodson & Son and their assigns. At this sale the plaintiff became the purchaser of the note herein sued on. The testimony upon the part of the defendant tends to prove that in March, 1904, F. W. Miles paid the amount of the note herein sued on to said Smith for the purpose of satisfying it. The note was not then in the possession of Smith, but was then held by Dodson & Son, who had no knowledge of this payment. In excuse for or explanation of paying the note to Smith without knowing that he was the holder thereof, or for failing to demand the note at the time of its payment, Mr. Miles testified that "it was a slack piece of business, I guess, being the only reason I know."

It is urged by counsel for defendants that the plaintiff purchased the note from the bank in February, 1905, which was after its maturity, and, on that account, was not an innocent purchaser thereof, but took it subject to all defenses that the makers had against the original payee, Smith; and they cite, to sustain this contention, *Nisbett* v. *Brown*, 30 Ark. 590, and *Sorrells* v. *McHenry*, 38 Ark. 127. But under the facts of this case we do not think that the makers can resist the payment of this note by any defense which they might interpose to it in the hands of the original payee, even if it should be held that the plaintiff obtained the note from the bank after its maturity. The note had been transferred by the payee, Smith, to Dodson & Son in August, 1903, long prior to its ma-

turity.    If Dodson & Son were at that time holders thereof for value in the due course of business, then any subsequent purchaser thereof from them, even though he obtained it after maturity, would be protected against any defense which the makers might have or be entitled to assert against the original payee.    As is said in 1 Daniel on Negotiable Instruments, p. 801: "As soon as the paper comes into the hands of a holder unaffected by any defect, its character as a negotiable security is established; and the power of transferring it to others with the same immunity which attaches in his own hands is incident to his legal right and necessary to sustain the character and value of the instrument and to protect the *bona fide* holder in its enjoyment."    And the author further says: "If the holder acquired the paper after maturity from one who became a *bona fide* holder for value and without notice before maturity, he is then protected by the strength of his transferrer's title."    1 Daniel on Negotiable Instruments, p. 776; *Woodmen* v. *Churchill*, 52 Me. 58; *Hogan* v. *Moore*, 48 Ga. 156; See also note to *Y. M. C. A. Gym. Co.* v. *Rockford Nat. Bank*, 46 L. R. A. 784.

At the time the note was transferred to Dodson & Son it was assigned by Smith as collateral security for his debt to them.    Dodson & Son were protected as innocent holders of this negotiable note, whether it was transferred to them to secure an indebtedness which was then incurred by Smith to them or a preexisting indebtedness.    In the recent case of *Haldiman* v. *Taft, ante,* p. 45, cited by this court, the rule is thus stated: "One who takes negotiable paper before maturity in payment or as security for an antecedent debt, and, without notice of any defect, receives it in due course of business, and is a holder for value free from any equities of the maker or indorser."    *Brown* v. *Calloway*, 41 Ark. 418; *Winship* v. *Merchants Bank*, 42 Ark. 22; *Tabor* v. *Merchants Nat. Bank*, 48 Ark. 458; *Evans* v. *Speer Hdw. Co.*, 65 Ark. 204; *Exchange Nat. Bank* v. *Coe*, 24 Ark. 387; *White-Wilson-Drew Co.* v. *Egelhoff*, 96 Ark. 105.    According to the undisputed evidence, Dodson & Son received the note herein sued on as collateral before its maturity in the due course of business and without any notice of any defense thereto; in fact, at that time there was no defect in or defense to this note.

Thereafter Dodson & Son transferred the note to the bank, which, in February, 1905, transferred it to plaintiff, who was, in fact, a member of the firm of Dodson & Son, and in effect the note was thus returned to the original assignee by the bank. But whether we shall consider the plaintiff as a purchaser of the note from the bank or only as retaking it from the bank after payment of the indebtedness of Dodson & Son, to it and thus obtaining it as collateral to the note for $6,000 given to them by Smith, which he also obtained from the bank, the rights of the plaintiff would be the same, and he would still be protected as an innocent holder of the note herein sued on. The note was constantly, after its assignment by Smith, the payee, in the hands of a holder who had acquired an interest in it, and such holder was alone entitled to the payment of it. After such transfer by the payee, the maker was not authorized to pay same to the payee of the note. He could only make a valid payment to the holder of the note; and if he made a payment to one who at the time was not the holder of it, he did so at his own risk. *Block* v. *Kirtland*, 21 Ark. 393; *Jenkins* v. *Shinn*, 55 Ark. 347; *State Nat. Bank of St. Louis* v. *Hyatt*, 75 Ark. 170; *Bank of Batesville* v. *Maxey*, 76 Ark. 472; *Winer* v. *Bank of Blytheville*, 89 Ark. 448; *Buchanan* v. *Hicks*, 98 Ark. 370.

In March, 1904, the defendants claimed that Miles made payment of the note herein sued on to Smith, the payee. At that time Smith was not the holder or owner of the note. Long prior to that time he had transferred it to Dodson & Son, from whom plaintiff acquired it, and thereby plaintiff acquired all rights and interest which Dodson & Son then had in the note. The payment made by Miles to Smith, therefore, did not result in the payment of the note unless the principal note, which had been executed by Smith to Dodson & Son, has also been paid. This question of fact as to whether or not the principal note for $6,000 executed by Smith to Dodson & Son has been paid, was, by consent of the parties, referred to a master. He took the testimony of all persons who had connection with the transaction, and who had made collections on the collaterals which had been put up to secure that note. He stated an account of these collections, and found that there was still due and unpaid on this principal note the sum of $1,781.89. This finding was approved by the chancellor. The master who

made this finding of fact was appointed by consent of the parties. This court has held that the finding of fact of a consent master is as conclusive as the finding of a jury—that is, if there is any legal evidence to sustain it, the finding must stand. *Greenhaw* v. *Combs,* 74 Ark. 336; *McDonald* v. *Kenney,* 101 Ark. 9. Upon an examination of the evidence relative to this issue, we are of the opinion that there is sufficient legal evidence to warrant this finding of fact made by the master and approved by the chancellor. It follows that the chancellor was right in rendering judgment in favor of plaintiff for the note sued on. The decree is accordingly affirmed.