EXCHANGE NATIONAL BANK *v.* STEELE.

Opinion delivered June 30, 1913.

1. BILLS AND NOTES—NOTE—NEGOTIABILITY.—A note containing an unconditional promise to pay a certain sum of money is negotiable, although given as the purchase price of certain mules, and containing a reservation of title in the animals as security.   (Page 112.)

2. BILLS AND NOTES—BONA FIDE HOLDER.—One who takes negotiable paper before maturity as security for a debt, without notice of any defect, receives it in due course of business, and is a *bona fide* holder.   (Page 113.)

3. BILLS AND NOTES—PAYMENT TO PERSON OTHER THAN HOLDER—DISCHARGE.—The maker of a negotiable note who pays the same to the payee, who is not the holder, is not discharged from his obligation to the holder, unless it is shown that the payee was authorized to receive payment, or that the holder led him to believe that the payee was so authorized.   (Page 113.)

4. BILLS AND NOTES—PAYMENT—SUFFICIENCY OF EVIDENCE.—Where maker of a note paid same to the payee, who was not the holder, the evidence *held* insufficient to show that the holder authorized payment to the payee.   (Page 114.)

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; reversed.

This was a suit in replevin, brought by appellant in the Lonoke Circuit Court, to recover the possession of two mules, the appellant claiming title to the mules as an innocent purchaser of a note given to Eagle & Co., of England, Ark., by T. E. Tolson for the purchase price of said mules, the title thereto remaining in Eagle & Co. until the full purchase price should be paid. Eagle & Co. did a large business at England and borrowed large sums of money from the appellant bank and deposited as collateral for these loans various notes payable to their order and taken in the course of their business. The note which forms the basis of this suit reads as follows:

"On or before the 1st day of October, 1911, for value received the undersigned promises to pay to Eagle & Co., or order, one hundred and eighty dollars, with interest at 10 per cent per annum from date until paid, negotiable and payable at England, Ark., it being for one brown mare mule, sixteen hands high, nine years old, named Kate; one brown horse mule, fifteen and one-half hands high, six years old, named Jack; and this day delivered to the maker of this note, with the understanding and agreement by and between the maker of the note and Eagle & Co. that the title of above described property is and shall remain in said Eagle & Co. until above amount is paid in full."

It is undisputed that appellant became an innocent purchaser of this note on the 24th of January, 1911, but appellees claim that they paid the note in question to Eagle & Co., on or about December 1, 1911. Appellant alleged that appellees were in possession of the mules, claiming the title thereto and had refused to deliver them upon demand made therefor and that they were worth $207, and judgment was prayed for the recovery of their possession, or for their value in case delivery could not be had. Appellant filed proper affidavit and bond, but

appellees filed cross bond and retained possession of the mules, and in their answer denied appellant's right to the immediate possession and alleged that they were entitled to the possession by virtue of having paid to Eagle & Co. for Tolson the note sued upon. That this payment was made on December 1, at which time Eagle & Co. transferred the mules to them, and that they made this payment without any knowledge of any claim in favor of plaintiff. The value of the mules as stated in the complaint was denied in the answer, but admitted upon the trial to be $207.

Various exceptions were saved by appellant during the progress of the trial which we need not discuss here, for under our view of the law as applicable to the undisputed evidence in this case, a verdict should have been directed for appellant. It is admitted that the note was in appellant's possession at the time the payment was made to Eagle & Co., but appellees insist that they should be protected in their payment because appellant had constituted Eagle & Co. as its agent to collect this and other notes given and used as this one was, and they say that if express authority to this effect had not been given, that such authority was implied from the course of dealing between the bank and Eagle & Co. The only witnesses who testified in the case were T. J. Hudson, who was the bookkeeper for Eagle & Co., appellee Steele, and Hussman, the assistant cashier of the bank, and Tolson, the maker of the note. There was no evidence on the part of the appellees that they had any personal knowledge of the course of dealing between Eagle & Co. and the bank, and the evidence in regard to Eagle's agency and authority in the collection of the notes, or of their course of dealing from which such authority could be inferred, consisted of the evidence of Hudson and of Hussman. Hudson testified that Eagle & Co. borrowed large sums of money from the appellant bank and deposited notes payable to them as collateral security always for an amount in excess of the sum borrowed. Upon his examination by appellee he was asked these questions:

Q. Did the Exchange National Bank ever collect any of these notes from the parties—who collected these notes from the parties—notes put up as collateral security?

A. Eagle & Co. Up until about two years before he failed, Eagle had paid the plaintiff (appellant) the amounts he had borrowed from it.

Q. In collecting these notes, have you frequently sent to the bank for the notes, collected them and sent the money to the Exchange National Bank?

A. We have done that, not frequently.

Q. When you got the money and when you got the note back from the bank, did you then turn the note over to the party who paid you?

A. Yes, sir.

Q. Did the Exchange National Bank ever make any objections to the collection of these notes which they held as collateral security?

A. None that I ever heard of.

Q. Now, of these notes which you had placed there and of which you did not have possession, who made the collection of these notes, you or the Exchange National Bank?

A. We have been in the habit of making the collections. When Eagle's note in favor of the bank fell due and he did not have the money to take it up, we usually asked for more time; sometimes on the same collateral. We sometimes exchanged collateral with the bank. The note in suit was paid to Eagle & Co. by Mr. Steele for Mr. Tolson.

These answers were all given over appellant's objections and Hudson further testified over appellant's objection that the appellant bank did not notify any maker of the notes held by them of their possession, and further that sometimes Eagle & Co. would have a party who would refuse to pay his note until they sent to the bank and got it. That when this was done they would write for the note and send the bank a check for the amount

of the note. This witness also gave the following answers:

Q. Do you know whether or not the Exchange National Bank knew you were making these collections of these notes?

A. I do not know about that; I suppose they did, but I do not know.

Q. On any of them, you do not know whether or not the bank knew you were making collections?

A. Of course, when they were past due. I reckon the bank thought we were collecting them, but I do not know whether they knew it.

And he testified that when Mr. Steele came to pay the note his recollection was that he told him the note was deposited in Little Rock, but nothing was said about any custom or authority claimed by Eagle & Co. to make the collections, but upon his cross examination by appellant he testified that Eagle & Co. had no authority to collect the notes which they had transferred to that bank, but that they simply assumed authority to do so; that Eagle would write to the bank for one of the notes which had been deposited as collateral and would either send other collateral to take the place of the note which they had requested the bank to send or would send the bank a check to take up the note which they had requested to be sent. And he was asked this question:

Q. As a matter of fact, you were not constituted agents to collect these notes?

A. I do not know of any authority.

Upon the part of the appellant, Hussman testified that "when the collateral notes would begin to fall due, the bank would call Eagle's attention to the fact and request him to take them up or to give live paper and the bank never accepted a note as collateral which was past due." That when the collateral notes were beginning to fall due and Eagle & Co. would take them up, the bank did not know where they got the money for that purpose; in a good many cases Eagle & Co. would send the bank a check and request it to send a certain note, which note

would be sent, but that the bank never authorized nor relied on Eagle & Co. to collect any notes which the bank held as collateral.

*Moore, Smith & Moore* and *Geo. A. McConnell,* for appellant.

1. One who takes negotiable property before maturity, as security for debt, without notice of any defect, receives it in due course of business, and is a *bona fide* holder. 94 Ark. 387; 143 S. W. 112; 144 *Id.* 908.

2. Payment to the payee is no defense unless the note is surrendered. 182 Ill. 454; 21 Ark. 393; 150 S. W. 411; 75 Ark. 170.

3. Eagle & Co. were not agents of plaintiff. 92 Ark. 315.

4. It is error to single out instructions 1 and 2 and read them to the jury. 73 Ark. 148; 88 *Id.* 458.

*Gray & Hutto* and *Vaughan & Akers,* for appellee.

1. The evidence shows Eagle & Co. were the agents of the bank in collecting the note. 83 Ark. 440; 150 S. W. 410; 50 Ark. 458.

2. There was no "singling out" of instructions by the court nor "glaring error" in the court's charge. The court summed up the whole case fairly and impartially. 88 Ark. 458.

3. There is evidence to support the verdict; no prejudicial error in the instructions and this court will not reverse. 57 Ark. 461; 77 *Id.* 556-7.

SMITH, J., (after stating the facts). Notwithstanding the reservation of title in the note herein set out, this was a negotiable note. It was an unconditional promise to pay a sum of money named and the recital of the consideration for which it was given, and the security reserved to insure its payment, did not destroy its negotiability. There was no option for the payment of anything but money and the reservation of title to the mules merely furnished a security for its payment which did not affect its negotiability. *Third Nat. Bank of Buffalo* v. *Spring,* 63 N. Y. Supp. 410. The rule in such cases

and the reasons therefor are stated and discussed in the opinion in the case of *Farmer* v. *Bank of Malvern,* 89 Ark. 132.

It is well settled in this State that one who takes negotiable paper before maturity as security for a debt, without notice of any defect, receives it in due course of business and is a *bona fide* holder. *Exchange Nat. Bank* v. *Coe,* 94 Ark. 387; *Haldiman* v. *Taft,* 102 Ark. 45, 143 S. W. 112; *Miles* v. *Dodson,* 102 Ark. 422, 144 S. W. 908.

In this case, therefore, the bank's right of recovery can be defeated only upon the theory that Steele had the right to make the payment to Eagle & Co. In the case of *Koen* v. *Miller,* 105 Ark. 152, 150 S. W. 411, it was said: ''If the maker of a negotiable note pays the same to the payee, who is not the holder, he is not discharged from his obligation to the holder without showing that the payee was authorized to receive payment or that the holder led him to believe that he was so authorized.'' And to the same effect is the case of *Block* v. *Kirtland,* 21 Ark. 393. But appellees insist that the facts of this case bring them within the exceptions stated in the Koen case, *supra.* We have quoted the evidence upon that subject, and when we have given it its highest probative value, in appellee's favor, we think it insufficient to support the finding that Eagle & Co. was authorized to receive this payment or that the bank had led appellees to so believe. There is nothing in this proof which would charge the bank with any knowledge that Eagle & Co. were making any collections for it or that they were taking any action in regard to the collateral notes not consistent with their use as collateral. The undisputed proof is that Eagle & Co. did a very extensive business and handled large sums of money and did only part of their banking business with appellant. The inference is unsupported by any legal evidence that the bank had any knowledge that Eagle was assuming to collect any of these collateral notes as appellant's agent. The facts in the case of the *State Nat. Bank of St. Louis* v. *Hyatt,* 75 Ark. 170, are almost identical with the facts in the case

at bar, and the reasoning of the court there applies with full force here, and the court there, speaking through Justice RIDDICK, said: ''The fact that a note is made payable at a particular bank does not of itself make the bank the agent of the payee or holder to receive payment and payment to a bank of the amount due on the note made payable there, when the bank does not have posses-' sion of the note or authority to collect it, does not discharge the maker, for under such circumstances the bank will be treated as the agent of the maker and not the holder.''

Appellees insist that this case is similar to and should be governed by the rule announced in *Ladenberg* v. *Beal-Doyle Dry Goods Co.,* 83 Ark. 440, but a study of the facts of the two cases show their dissimilarity. In the Ladenberg case the court found that the jury was warranted in finding from the evidence that the agency, if unauthorized, had been ratified, while under this evidence there is no question of ratification. There could be no safety, nor security, for a bank in lending money if its permission to its debtors to redeem particular collateral by paying the face value of such collateral should be held to be either a grant of authority to the debtor to collect other collateral, or a ratification of the debtor's act in doing so. Transactions like those between appellant and Eagle & Co. are common and the conflict between their interests is such that no presumption of agency can be indulged, for if so, the value of the collateral as such would be destroyed and had as well be returned, for the bank then would have no protection except the sense of honor of its debtor. And we think the proof here was insufficient to warrant the submission of the question of agency to the jury. In fact, the issue of agency was not raised in the pleadings until after the conclusion of the evidence, when, over appellant's objection, appellees were permitted to amend their answer by setting up that Eagle & Co. were appellant's agents.

The judgment of the court is therefore reversed and the cause remanded.