NEWELL CONTRACTING COMPANY *v.* MCCONNELL.

Opinion delivered January 22, 1923.

1. APPEAL AND ERROR—WAIVER OF OBJECTION.—Objection that a suit in equity should have been brought at law is waived where no motion was made to transfer the cause to the law court.

2. RECEIVERS—TESTIMONY AS TO AUTHORITY.—Testimony of the president of a bank that the bank had failed and that plaintiff had been appointed receiver and had taken charge of its affairs and was now administering its assets, which was admitted without objection, shows that the receiver was authorized to maintain a suit upon a note held by the bank.

3. BILLS AND NOTES—HOLDER FOR VALUE.—One who takes negotiable paper before maturity as security for a debt, without notice

of any defect therein or defense thereto, is a *bona fide* holder in due course for value, within Crawford & Moses' Dig., § 7818.

4. BILLS AND NOTES—HOLDER FOR VALUE.—The fact that the debt for which a note was given as collateral security was not due at the time the collateral was given does not affect the question of value given for the collateral note.

5. BILLS AND NOTES—GOOD FAITH IN TAKING NOTE.—The good faith of a bank in taking the note in suit as collateral security is not impeached by the failure of the bank's president to explain in detail the transaction in which he received the note, where he fully answered all questions asked him, nor by the failure of the principal note to recite the existence of the collateral where the principal note was executed before the collateral note, nor by failure to produce records of the bank showing ownership of the notes as collateral where no request for such records was made.

Appeal from Cross Chanecry Court; *A. L. Hutchins,* Chancellor; affirmed.

*L. C. Going,* for appellant.

The chancery court was without jurisdiction. 56 Ark. 476; 20 S. W. 402. Where the remedy at law is complete, a party is not entitled to come into equity for relief. 7 Ark. 520; 13 Ark. 630; 26 Ark. 649; 27 Ark. 77; 48 Ark. 331; 30 Ark. 579; 14 Ark. 50; 141 Ark. 649. The cause should have been transferred to the circuit court. 27 Ark. 585.

The proof is wholly insufficient to show that the bank was a holder of the note for value. In order to constitute one a *bona fide* holder, he must be a purchaser for value. 8 Cyc. 470, § 687; C. & M. Digest, § 7818; 131 Ark. 514.

*Cary & Vorder Bruegge* and *Hughes & Hughes,* for appellee.

The appellant having failed to move a transfer of this cause in the trial below, that question cannot be raised here for the first time. C. & M. Digest, § 1041; 57 Ark. 589; 122 Ark. 104; 141 Ark. 155.

One who takes negotiable paper before maturity as security for a debt, without notice of any defect, is a

*bona fide* holder.   94 Ark. 387; 102 Ark. 45; 102 Ark. 422; 109 Ark. 107; 126 Ark. 420.

A preexisting debt constitutes value.   C. & M. Digest, § 7791.   The debt exists until the note is paid. 17 C. J.; 53 N. J. L. 200.

SMITH, J.   On September 25, 1920, appellant company executed its negotiable promissory note of that date, due December 10th after date, for $2,500, to the order of H. A. Morrison; and this is a suit to collect it.   The note was dated at Earle, Arkansas, and was payable at the Bank of Commerce in that city.   The plaintiff is the receiver of the People's Bank & Trust Company, a defunct banking corporation of Memphis, Tennessee.   The execution of the note by appellant is admitted, but a failure of consideration is alleged, and the answer further recites that the bank was not an innocent holder of the note.

Two preliminary questions are raised which will be disposed of before considering the case on its merits.

The first is, that the suit should have been brought at law.   This objection is fully answered by saying that no motion was made to transfer the case.   Secs. 1041, 1043, C. & M. Digest; *Hayes* v. *Bishop*, 141 Ark. 155.

The second proposition is that the receiver shows no right to maintain this suit.   In answer it may be said that Portlock, the president of the bank, testified without objection that the bank failed and closed its doors, and appellee McConnell was appointed receiver and took charge of its affairs and is now administering its assets.

Upon the merit of the case it may be said the note was without consideration.   No contention to the contrary is made by the receiver.   But it is also insisted that the bank was not an innocent purchaser of the note. The insistence is that the bank received the note for collection for Morrison's account, and not as a purchaser.

The testimony of Portlock is unequivocal to the effect that the bank took the note as collateral to the note of Morrison, which it then held, without notice of any

defense to it. Morrison had been indebted to the bank for some time, and on September 12, 1920, renewed his note for $2,750, the same being made payable four months after date. At that time the bank advanced no additional consideration.

It is urged that Portlock was an uncandid witness and that he should have explained the transaction in greater detail. He appears to have answered all the questions fully which were asked him, both on his direct and cross-examinations.

This court is fully committed to the doctrine that one who takes negotiable paper, before maturity, as security for a debt, without notice of any defect therein or defense thereto, receives it in due course of business and is a *bona fide* holder. The following cases have so held: *Exchange Natl. Bk.* v. *Coe,* 94 Ark. 387; *Haldiman* v. *Taft,* 102 Ark. 45; *Miles* v. *Dodson,* 102 Ark. 422; *Exchange Nat. Bank* v. *Steele,* 109 Ark. 107; *Beard* v. *Bank of Osceola,* 126 Ark. 420.

Appellant says the cases cited were all decided or arose before the enactment of the negotiable instruments law (secs. 7760 *et seq.,* C. & M. Digest; act Feb. 21, 1913), and that sec. 52 of this act (which is sec. 7818, C. & M. Digest) has changed the rule as announced in the cases just cited. This sec. 7818 of the Digest defines a holder in due course, and the third paragraph of the section requires that he shall have taken the paper in good faith and for value. The argument is that, under the negotiable instruments law, value must be paid at the time the note is taken, and that the giving or security for a preexisting debt is not value within the meaning of the law. We do not so interpret the statute. Sec. 25 of this act (which is sec. 7791, C. & M. Digest) defines value as follows: "Sec. 7791. Value is any consideration sufficient to support a simple contract. An antecedent or preexisting debt constitutes value, and is deemed such, whether the instrument is payable on demand or at a future time."

This definition accords with our cases cited above.

In the case of *Exchange Nat. Bank* v. *Coe, supra,* this court first had occasion to determine whether one who receives a negotiable note, before maturity, as collateral security for a preexisting debt, was a holder for value in due course of business. The authorities were examined and were found to be in hopeless conflict, as stated in the opinion. Without attempting to determine where the weight of authority was, it was said that the trend of modern decisions was in favor of the rule adopted in the Federal courts as tending to promote uniformity in the different jurisdictions. This was said to be important, in view of the increased dealings between the citizens of the different States, and because the courts of the National Government did not follow the decisions of the State courts on the question. Upon consideration of the facts stated, this court decided that the indorsee of negotiable paper, taken before maturity, as collateral security for an antecedent indebtedness, in good faith and without notice of defenses which might have been available as between the original parties, holds the same free from such defenses; and the rule there announced has been adhered to consistently since.

We think it certain that there is nothing in the negotiable instruments law which has been enacted in this State which requires us to modify that rule. Upon the contrary, it appears that several of the States which had not adopted the Federal rule changed their decisions to conform thereto after the enactment of the negotiable instruments law, and assigned the enactment of this law as the reason for so doing. See cases cited in note 25, page 490, to 8 C. J. The text to which this note appears reads as follows: "This general rule (the Federal rule) is the one adopted by the negotiable instruments law."

We think it unimportant that Morrison's note was not due at the time the bank took the collateral. The point was not discussed in *Exchange Nat. Bank* v. *Coe,*

*supra,* nor in any of the cases which have followed it. Counsel have examined the original transcripts in those cases, and find that in two of them the collateral note was taken after the execution of the principal note and before the maturity of the principal note. But the point was not regarded as important in those cases, and we do not regard it as important now.

It is finally urged that the testimony impeaches the good faith of the transaction and shows the bank held the note only for the purpose of collection for Morrison's account. It is said that Portlock should have explained in detail the circumstances under which the bank acquired the note. He was not asked to do so, although he was cross-examined by appellant's counsel. He answered all the questions which were asked him fully, and we find nothing in any of his answers which warrants us in discrediting the witness' statement that the bank received the collateral note for value, in the usual course of business, without knowledge of any defect therein or defense thereto.

It is pointed out that Morrison's note does not recite the existence of this collateral note, and it is urged that this fact discredits the testimony of the witness Portlock. The witness was not asked to make an explanation of this fact, and we cannot know what his answer would have been. We do know, however, that Morrison's note to the bank was executed on September 12th, and the collateral note was not then in existence, as it was not executed until September 25th thereafter.

Counsel says there is nothing in the records of the People's Bank & Trust Company to indicate that the bank owned the note sued on or held it as collateral. We find nothing in the record before us to support this assertion. It is true Portlock did not produce any record of the bank showing that the bank owned the note or held it as collateral, but it is also true that he was not asked to produce such records.

The court below found that the bank was an inno-cent holder of the note sued on and rendered judgment in favor of its receiver for the amount thereof, and that decree is affirmed.