**BENNETT v. SEMMES et al.  (NAT. PARK BANK et al., Interveners).**

**In re SCOTT BOND & SONS.**

(District Court, E. D. Arkansas. March 27, 1923.)

1. **Mortgages ⊕235—Assignment of secured note carries mortgage with it.**

   The assignment of a note secured by a mortgage carries with it the lien of the mortgage.

2. **Bills and notes ⊕116—Uniform Negotiable Instrument Law construed according to law merchant.**

   The sections of the Uniform Negotiable Instrument Law of Arkansas relating to holders in due course are in effect re-enactments of the law merchant, so that the rules prevailing under the law merchant are controlling in the construction of the act.

3. **Bills and notes ⊕358—Accepting notes as security for pre-existing debt is taking for value.**

   One accepting as security for a valid existing indebtedness the notes of a third person before maturity without notice of any defenses by the maker holds them as a bona fide holder for value, free from defenses which the maker could make if they were still in the hands of the original payee, unless the notes are void and not only voidable, both under the law merchant and under Arkansas Negotiable Instrument Law (Crawford & Moses' Dig. § 7818), defining "holder in due course," and section 7791, defining "value."

4. **Bills and notes ⊕345—Fact takers of notes surrendered others not yet due does not charge them with notice of defenses.**

   The fact that the takers of notes as security for pre-existing debts surrendered at the time of taking them other notes of the same makers, which

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

were not then due, does not charge the takers with notice of defenses against the new notes.

5. Bankruptcy ⊜⟶186(2)—Preference is not recoverable from bona fide purchaser for value; "person."

Bankruptcy Act, § 60, as amended in 1910 (Comp. St. § 9644), which, after declaring certain preferences to be voidable, authorizes the trustee to recover the property affected thereby or its value "from such person," does not entitle the trustee to recover property which was the subject of an unlawful preference from a bona fide holder thereof for value, who received it from the preferred creditor, any more than a fraudulent conveyance can be recovered from a bona fide purchaser under section 70e of the act (Comp. St. § 9654).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Person.]

6. Bankruptcy ⊜⟶168—Preference can only be recovered from "person" receiving it.

The provision of Bankruptcy Act, § 60, as amended in 1910 (Comp. St. § 9644), authorizing the trustee to recover a preference from "such persons," refers to the person who received the unlawful preference, and limits the recovery to one from such person.

7. Bankruptcy ⊜⟶151—Trustee occupies no better position than bankrupt or his creditors.

A trustee in bankruptcy occupies no better position than the bankrupt or his creditors would have occupied, if bankruptcy had not intervened, except as expressly provided by the Bankruptcy Act (Comp. St. §§ 9585–9656).

8. Bankruptcy ⊜⟶186(2)—Voidable transfer cannot be set aside as against bona fide purchaser.

Under Bankruptcy Act, § 60, as amended in 1910 (Comp. St. § 9644), preferences are only voidable, and not void, and such voidable transfer gives the transferee power to assign the property to one who cannot be deprived of it, if he is a bona fide purchaser for value.

9. Bankruptcy ⊜⟶186(2)—Act not construed to change law of negotiability, unless language is clear.

The Bankruptcy Act (Comp. St. §§ 9585–9656) would not be given a construction which will change the law of negotiability of instruments by entitling the trustee to recover a negotiable instrument given by the bankrupt to a creditor as an unlawful preference from a subsequent bona fide purchaser for value, unless the intention so to do was manifested by clear and explicit language, free from ambiguity.

In Equity. Suit by O. A. Bennett, as trustee of the estate of Scott Bond & Sons, bankrupts, against B. J. Semmes, trustee under a trust deed, and another, in which the National Park Bank and others intervened. Bill dismissed.

Mann & Mann, of Forrest City, Ark., for plaintiff.

Hughes & Hughes, of Memphis, Tenn., for defendants and interveners.

TRIEBER, District Judge. This is an action by a trustee of a bankrupt estate to set aside a deed of trust in the nature of a mortgage executed by the bankrupts to the defendant Semmes, as trustee for his codefendant, Rainer & Connell Company, a corporation, to secure an indebtedness of $125,000, evidenced by a number of notes of the bankrupts, which trust deed was executed within four months of their adjudication as bankrupts, to secure a pre-existing indebtedness of the

bankrupts. The proper allegations necessary to maintain the bill are set out-in the complaint.

The defendants in their answer denied the insolvency of the mortgagors, and, if insolvent, that they had knowledge thereof, or of facts sufficient to put them on notice. Three banks, the National Park Bank, of New York, the First Trust & Savings Bank, of Chicago, Ill., and the Guaranty Bank & Trust Company, of Memphis, Tenn., by leave of the court filed interventions each claiming to be the holder in due course of some of the notes secured by the trust deed sought to be set aside.

So far as the Rainer & Connell Company, the beneficiary in the mortgage trust deed, is concerned, the evidence convinces, and the court so finds, that at the time of the execution of the mortgage the bankrupts Scott Bond & Sons and Scott Bond individually were insolvent within the meaning of the Bankruptcy Act (Comp. St. §§ 9585–9656), and that Rainer & Connell Company had knowledge of facts sufficient to put it upon notice of their insolvency. The remaining question is whether the interveners, the holders of the notes secured by the mortgage, are entitled to the relief they ask, that the mortgage be decreed to be valid, as to the notes held by them, entitling them to the benefit of the lien thereof, and that they have leave to file their independent suit to foreclose it.

The undisputed facts are that the Rainer & Connell Company were indebted to the Park National Bank of New York in the sum of $50,-000, evidenced by its notes; that on November 19, 1920, when said notes matured, the bank renewed them at the request of the Rainer & Connell Company, and to secure the same it delivered to the bank as collateral security, in addition to other notes, two of the notes of the bankrupts, amounting to $25,000, secured by the deed of trust attacked in this action; that it had no knowledge of the insolvency of the mortgagors or the makers of the notes at the time of the execution of the notes and mortgage, or of any facts which upon inquiry or investigation would have resulted in a discovery of their insolvency, but that it took them in due course, in good faith, for value, and before they had matured.

The facts concerning the First Trust & Savings Bank are practically the same, differing only in that the indebtedness due it from Rainer & Connell Company amounted to $149,099.64, evidenced by notes, and upon a renewal of these notes on November 19, 1920, the Rainer & Connell Company pledged as collateral security, in addition to other notes, notes of Scott Bond & Sons amounting to $49,000, secured by the same mortgage deed of trust. The rest of the notes were pledged as collateral security to the Guaranty Bank & Trust Company on November 19, 1920, as collateral security for a debt of $48,000 due it from the Rainer & Connell Company, renewed December 26, 1920. It also took them, it is alleged, in due course, for value, without notice of the mortgagor's insolvency.

[1] That the assignment of a note secured by a mortgage carries with it the lien of the mortgage is well settled. Batesville Institute v. Kauffman, 85 U. S. 151, 21 L. Ed. 775 (an Arkansas case); Union Nat. Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; National Live Stock

Bank v. First Nat. Bank, 203 U. S. 296, 27 Sup. Ct. 79, 51 L. Ed. 192; Church v. Swetland, 243 Fed. 289, 156 C. C. A. 69; Meyer v. Ritter, 268 Fed. 937, 941 (8th C. C. A.); Erdman v. Erdman, 109 Ark. 151, 159 S. W. 201.

[2] The first question necessary for the determination of the rights of the interveners is whether, under the Uniform Negotiable Instrument Law, which is in force in the state of Arkansas, they are holders of the notes in due course; the notes having been executed and delivered, and the mortgaged lands lying and situated, in that state. The sections of the Uniform Negotiable Instrument Law of Arkansas, hereinafter set out, are in effect re-enactments of what had been, prior to their enactment, the well-established law under the law merchant, and for this reason the rules of law prevailing under the law merchant are controlling in the construction of the Uniform Negotiable Instrument Law.

[3] That one accepting as security for a valid existing indebtedness the notes of a third person, for value, in due course, before maturity, without notice of any defenses by the maker, holds them, under the law merchant, free from such defenses which the maker could make, if they were still in the hands of the original payee, unless the statute declares them void, and not only voidable, has been uniformly held before the enactment of the Uniform Negotiable Instrument Law under the law merchant by practically all courts, and expressly by the Supreme Courts of the United States and of the state of Arkansas. Railroad Co. v. National Bank, 102 U. S. 14, 23, 26 L. Ed. 61; American File Co. v. Garrett, 110 U. S. 288, 294, 4 Sup. Ct. 90, 28 L. Ed. 149 (a case which arose under the Bankruptcy Act of 1867 [14 Stat. 517]); McMurray v. Moran, 134 U. S. 156, 158, 10 Sup. Ct. 427, 33 L. Ed. 814; Exchange National Bank v. Coe, 94 Ark. 387, 389, 127 S. W. 453, 31 L. R. A. (N. S.) 287, 21 Ann. Cas. 934; Haldiman v. Taft, 102 Ark. 45, 143 S. W. 112; Exchange National Bank v. Steele, 109 Ark. 107, 113, 158 S. W. 969.

Aside from this, section 7818 of the Arkansas Negotiable Instrument Law (Crawford & Moses' Dig.) defines a holder in due course as:

"A holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) That he becomes the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

And section 7791 of that act defines the meaning of the word "value":

"Value is any consideration sufficient to support a simple contract. *An antecedent or pre-existing debt constitutes value.*"

[4] On behalf of the plaintiff it is claimed that, as the notes of Scott Bond & Sons held by the interveners as collateral security for the notes of the Rainer & Connell Company were not due when the notes in controversy were delivered to them on the renewals of the company's notes, they are not holders in due course. But as these notes were ex-

tinguished by the new notes of Scott Bond & Sons, which were secured by the mortgage, and had to be surrendered for cancellation and returned to Scott Bond & Sons, interveners are not chargeable with notice of their insolvency.

A creditor has the right to accept security for an existing indebtedness, and, considering the large amount of the indebtedness due from Scott Bond & Sons to the Rainer & Connell Company, there is nothing unusual in their accepting security for this indebtedness which the debtors were willing to give so as to·charge bona fide holders with notice of facts not appearing on the face of the notes. It certainly is not sufficient to charge interveners with notice of facts sufficient to charge them with knowledge of the insolvency of the makers of the notes. The interveners are beyond question holders in due course, Swift v. Smith, 102 U. S. 442, 26 L. Ed. 193.

[5] The only other question involved is whether under the Bankruptcy Act such a holder of notes is entitled to the lien securing them against the trustee in bankruptcy, although the mortgage, if the notes were still in the hands of the original payee, would be void as an unlawful preference. Section 60 of the Bankruptcy Act (Comp. St. § 9644), as amended by the act of 1910, after declaring what preferences are voidable, provides that the trustee is entitled to "recover the property [referring to the property conveyed in violation of that section], or its value from such person."

Upon facts practically identical with those in the case at bar, the United States Circuit Court of Appeals for the Fourth Circuit, in Davis v. Hanover Savings Fund Society, 210 Fed. 768, 771, 127 C. C. A. 318, held that the holder for value, in due course, of bonds secured by a mortgage on the bankrupt's property, which ·was an unlawful preference, when assigned as collateral security for an existing indebtedness, is entitled to the lien of the mortgage. Section 70e of the Bankruptcy Act (Comp, St. § 9654), which applies to fraudulent conveyances by a bankrupt, is in most respects similar to section 60, and has been uniformly construed by the federal as well as state courts, that a trustee in bankruptcy cannot recover property, fraudulently conveyed by a bankrupt to one who had knowledge of the fraudulent intent of the bankrupt, from one who became the owner thereof in due course, in good faith, and for value, without notice of the fraud. Bush v. Export Storage Co. (D. C.) 136 Fed. 918; Gray v. Breslof (D. C.) 273 Fed. 526; Black on Bankruptcy, § 464, and the numerous authorities of state courts there cited.

It is true that section 70e expressly excepts "a bona fide holder for value," but the same rule must be applied to preferences under section 60 for a number of reasons.

[6] (a) A recovery under section 60 is limited "to such persons," clearly referring to the person who received the unlawful preference. A careful reading of the entire section can lead to no other conclusion.

[7] (b) A trustee in bankruptcy occupies no better position than the bankrupt, or creditors of the bankrupt, if bankruptcy had not intervened, except as expressly excepted by the Bankruptcy Act. Zartman v. First National Bank, 216 U. S. 134, 30 Sup. Ct. 368, 54 L. Ed. 418; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed.

577; In re Newton & Co., 153 Fed. 841, 83 C. C. A. 23, affirmed Bryant v. Swofford Bros. Dry Goods Co., 214 U. S. 279, 29 Sup. Ct. 614, 53 L. Ed. 997; Collier on Bankruptcy (12th Ed.) p. 1117; Black on Bankruptcy (3d Ed.) § 316.

[8] (c) Section 60 declares such preferences only voidable, and not void. A voidable transfer is good, even in the hands of the unlawfully preferred creditor, until set aside, or proceedings to set the preference aside are instituted; but an assignment or transfer from the preferred grantee to one who is a bona fide purchaser or holder for value in due course, without notice of the fraud in the original transaction, is good, and such an assignee or transferee cannot be deprived of it, or be held liable for its value, in an action by the trustee of the bankrupt estate. This applies with greater force to negotiable instruments. To hold otherwise would necessitate a purchaser of every negotiable instrument making inquiries, which the law does not require.

[9] To place this construction on the act would greatly interfere with, if not wholly destroy, the negotiability of such instruments in the financial world. To warrant a court to place such a far-reaching departure from a well-established rule of law, the legislative intention must be manifested by clear and explicit language, free from ambiguity, so that there can be no doubt that the intent of the lawmakers was to give such an effect to the act. As early as 1805, Chief Justice Marshall in United States v. Fisher, 6 U. S. (2 Cranch) 358, 2 L. Ed. 304, said:

"Where fundamental principles are overthrown, where the general system of the law is departed from, the legislative intention must be expressed with irresistible clearness to induce a court of justice to suppose a design to effect such objects."

This rule of law has been uniformly followed by that court, as well as other courts. Cummings v. Chicago, 188 U. S. 410, 430, 23 Sup. Ct. 472, 47 L. Ed. 525; Shwab v. Doyle, 258 U. S. 529, 536, 42 Sup. Ct. 391, 66 L. Ed. 747; De Lucca v. City of North Little Rock (C. C.) 142 Fed. 597, 605. Any other rule would, in effect, make negotiable instruments no better than ordinary choses in action. No court has ever held that this provision of the Bankruptcy Act should be so construed.

The bill will be dismissed, with leave to the interveners, as prayed, to institute proceedings for the enforcement of their liens in any court of competent jurisdiction they see proper to select.

As to the defendant, Rainer & Connell Company, it being no longer the owner of the notes and mortgage, the bill is dismissed without prejudice to the plaintiff to institute an action against it for the value of the preference, if the trustee so elects.

The costs will be taxed against the plaintiff.