ARCHER *v.* BUCY.

5-2700 357 S. W. 2d 636

Opinion delivered June 4, 1962.

[Rehearing denied September 10, 1962.]

*Camp & Brinkley,* by *Gus Camp,* for appellant.

*Kirsch, Cathey & Brown,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee instituted an action to recover the alleged balance due under a conditional sales contract dated August 31, 1959, covering one used tractor and one used cotton picker.[1] Appellants, Henry Archer and Herschel Murdock, answered, and for their defense alleged breach of express warranty,

---

[1] This litigation is determined under law existing prior to January 1, 1962, when the Uniform Commercial Code became effective.

sought damages and rescission, and pleaded failure of consideration. Subsequently, the answer was amended to allege an implied warranty rather than an express warranty. The case proceeded to trial, during the course of which, the court permitted appellants, over the objections of appellee, to amend the pleadings to include the affirmative defense of an express and oral warranty. At the conclusion of the evidence offered on behalf of appellants, the court directed a verdict in favor of appellee. Judgment was entered in the sum of $3,999.82, $3,074.00 representing the principal balance due under the contract, $562.11 representing interest, and $363.71 representing attorney's fee as provided in the contract. From the judgment so entered, appellants bring this appeal.

The proof reflects that Archer and Murdock purchased a used Allis-Chalmers cotton picking machine, and a used tractor from appellee on August 31, 1959, for the agreed sum of $4,074, the note bearing interest at 8% per annum from date to maturity, and 10% per annu after maturity. Under the terms of the contract, $2,074 was due on October 15, 1959, and $2,000 on October 15, 1960. A total of $1,000 was subsequently paid on the purchase price, $500 being paid in October of 1959, $300 in March, 1960, and $200 in May, 1960. According to the evidence offered by appellants, the cotton picker never did properly function. Murdock stated that directions as to operation of the machine were followed, but that it "tore up" before a bale was picked. Bucy, several times, sent an employee to work on the machine, but it did not remain in operating condition. Archer testified that they told Bucy within three weeks after entering into the contract, to get the picker and take it back; however, Bucy refused to do so, and appellants continued to use the machine. Testimony by appellants and their witnesses enumerated deficiencies of the picker, and its failure to operate. Under the view that we take, a detailed discussion of this testimony is deemed unnecessary, for the question of whether the machine properly functioned is not controlling in this litigation.

There is no written express warranty; in fact, the only written warranty refers to repairing or furnishing parts to replace parts which were defective at the time of the sale of the machine, and this warranty only applies to new machinery. The contract then provides that this is the sole warranty, ''either express, implied, or statutory, upon which said machinery is sold'', and ''no representative of the company has authority to change this warranty or this contract in any manner whatsoever, and no attempt to repair or promise to repair or improve the machinery covered by this contract by any representative of the company shall waive any consideration of the contract or change or extend this warranty in any manner whatsoever.'' As to an implied warranty, Section 68-1415 can have no application, for the proof reflects that the contract involved herein is a conditional sales contract. Such a transaction is specifically exempted from the application of the Uniform Sales Act, Ark. Stats. 68-1479. Relative to the contention of an oral warranty, this court said in *Hembrick* v. *Peoples Mercantile & Implement Co.*, 228 Ark. 1021, 311 S. W. 2d 785:

''The defendants offered to show that the seller orally warranted the condition of the machine. The contract of sale, however, is in writing and recites that it constitutes the entire agreement between the parties. Parol evidence was therefore not admissible to prove the giving of an oral warranty.''

In *Hignight* v. *Blevins Implement Company*, 220 Ark. 399, 247 S. W. 2d 996, we said:

''The written contract of sale provides that it is made without any express or implied warranties. In view of this provision it was incumbent upon the defendant to show that his assent to the contract was induced by fraud. Not only is there no evidence of fraud; even if there were such testimony the defendant has waived his right to complain. His proof is that the motor did not perform properly for even a single day, yet he kept the machine and continued to make pay-

ments on the purchase price for eight months after sign-ing the contract. His only reason for this delay is that it was not until eight months after his purchase that he noticed water seeping from the engine and concluded that the block was broken. But Nathan Crawley, his employee whose duty it was to operate and repair the motor, testified that he noticed this seepage on the day the motor was delivered, or the next day. The defendant is charged with knowledge acquired by his employee in the course of his duties and in circumstances in which the knowledge should have been reported to the master.'' In the instant case, fraud is not alleged in the pleadings, nor does the proof reach that degree. However, as pointed out in Hignight, even if there were evidence of fraud, appellants have waived any right to complain. Admittedly, appellants retained the machine through the fall of 1960, and in both 1959 and 1960, picked cotton with it. It is true that they complained about its per-formance, but they continued, over this long period of time, to use it, and made payments upon the purchase price as late as May of the latter year. Under such cir-cumstances, appellants were entitled to neither damages nor a rescission of the contract. In *Kern-Limerick, Inc., v. Mikles,* 217 Ark. 492, 230 S. W. 2d 939, we said:

''Many questions are presented in the excellent briefs; but we find it unnecessary to consider any of them except Kern-Limerick's request for an instructed verdict, because an answer to that question is deter-minative of the case and requires a reversal and dis-missal. * * *

The cross complaint of Mikles was on two counts: (a) failure to properly repair the WK tractor, and (b) fraudulent misrepresentations as to condition of the HD tractor. But Mikles waived any cause of action he might have had for damages on either of these counts: by his letter of February 18, he consented to the sale of the WK tractor and the crediting of the proceeds to his account; and by his letter of July 8, he agreed to pay for the HD tractor if given three days (which was granted).

The case at bar is ruled by our cases of *Schichtl* v. *Bowser*, 175 Ark. 1141, 1 S. W. 2d 816, and *Pate* v. *McWilliams*, 193 Ark. 620, 101 S. W. 2d 794.

In *Schichtl* v. *Bowser, supra,* the buyer claimed damages for breach of warranty of pumping equipment. The evidence showed that the buyer used the equipment for a year, discovered all of the claimed defects, and when pressed for payment, requested additional time and promised payment. In that case the trial court instructed a verdict for the seller for the balance due on the pumping equipment and we affirmed, saying:

'The court instructed a verdict for appellee, and properly so, because appellant waived his right, to rely upon the defects in the outfit under his guaranty, by writing the letter to appellee's attorney of date April 26, 1926, in which he made an absolute promise to pay the balance of the purchase money, irrespective of any defects he had complained of prior to that time.'

In *Pate* v. *McWilliams, supra,* the seller brought suit on a title retaining contract involving automobiles; and the buyers cross complained for damages, because of alleged fraudulent misrepresentations inducing the sale. The evidence showed that the buyers used the cars from May until December; and after having received full knowledge that the alleged representations were not true, the buyers continued to make payments on the automobiles. On such evidence the trial court instructed a verdict for the seller in his action for the balance of the contract price; and this Court affirmed, saying:

''. . . appellants waived the right to defend on the ground of a fraudulent procurement of the contract, by making no complaint and by using the trucks and making monthly payments thereon long after they claimed to have discovered that the Dodge truck consumed more gas and oil than the Chevrolet trucks had consumed.' ''

We have so held in numerous other cases. Here, too, there was a promise, as late as 1960, to pay the balance.

Also, Archer, on May 31, 1960, mortgaged his one-half interest in the cotton picker to the Corning bank. At the time of the trial, he was still indebted to the bank, and that institution still held the mortgage on the cotton picker.

Appellants' final contention relates to plaintiff's exhibit No. 2, executed about the same time as the note, and which reads as follows:

"WHEREAS, Bucy Implement Company has sold to me a W. D. Allis Chalmers Tractor & 1 Row Allis Chalmers Cotton Picker No. CP 1-1025, for which a balance of the purchase price still remains unpaid. Therefore, I hereby agree that as I custom-pick and market my Cotton Crop for 1959-1960, there shall be paid on account of said debt out of each bale of cotton sold, the sum of $1.50 per hundred, and the purchaser of same is authorized to withhold the same and pay the total amount direct to the BUCY IMPLEMENT COMPANY.

/s/ HERSCHEL MURDOCK

/s/ HENRY ARCHER"

It is asserted that an issue was presented as to the manner of payment for the picker, which should have gone to the jury. In support of this position, appellants rely upon *Stephens* v. *Smith,* Law Reporter, April 10, 1961. The facts in that case were vastly different from those now before us. In *Stephens,* a cotton picker was purchased for the price of $8,517, and the purchasers executed their note in that amount. The note bore a notation in the left-hand corner, "to be paid out of picking." All parties agreed that the appellees were to pay $25 out of each bale of cotton picked, and appellees contended that their liability was limited to the $25 per bale; we upheld the Circuit Court in its finding to that effect. The picker was repossessed by appellant company before a sufficient amount of cotton had been picked to pay for the machine.

We find no merit in appellants' contention for the language of the two instruments is entirely different. In the *Stephens* case, the notation on the note flatly stated that payments "were to be paid out of picking". Here, the memorandum signed by appellants contains no provision that the picker will be paid for entirely from the proceeds derived from cotton picked by the machine. Rather, this agreement seems to be in the nature of additional collateral to secure the purchase price, *i.e.*, it would serve to prevent appellants from picking their cotton with the machine, and disposing of the proceeds from the sale of the cotton without making their payments to Bucy. It is also, of course, noted that in *Stephens*, the notation appears on the note itself, while here, the picking contract is a separate instrument. The controlling fact, however, is the language used. No jury question was presented by the instrument, but appellants assert that they should have been permitted to offer oral testimony in support of their contention that the agreement, under plaintiff's exhibit No. 2, was that the picker should be paid for solely in accordance with the amount of cotton picked with the machine. This contention is contrary to the view of this Court as expressed in *Jones* v. *Cox*, 227 Ark. 750, 301 S. W. 2d 12. In that case, Cox sold Jones a concrete mixer. Jones contended that, following execution of the conditional sales contract, on the same day, he had an agreement with Cox that the equipment would be paid for solely and absolutely out of the net profits derived by Jones from the use of such equipment. From the opinion:

"After the matter was discussed it was reduced to writing and signed by Sam M. Cox and Wesley N. Jones, and was sworn to before a notary public, on June 23, 1954. This note or writing reads as follows: 'Any and all net monies acquired from the truck and mixer applies to the purchase price agreed upon, which is the amount of the unpaid balance of the contract with the Universal CIT Credit Corporation, Little Rock, Arkansas.' It will of course be noted that this writing contains no provision that the equipment would be paid for entirely and abso-

lutely out of the net profits and nothing else. It seems unlikely that Mr. Jones and Mr. Cox would have omitted from the writing anything as essential as that contended for by appellants if it had in fact been agreed upon. * * *

Moreover, since the parties put their agreement in writing, oral testimony would not be admissible to engraft other agreements or understandings made or had at the same time. The rule that permits testimony to show a subsequent oral agreement (citing case) is not applicable here, because, if there were any such oral agreement as appellant contends for, it was contemporaneous with and not subsequent to the written agreement which Jones and Cox signed."

No error appearing, the judgment is affirmed.