OUACHITA INDUSTRIES *v.* ANDERSON.

5-3023                                   370 S. W. 2d 811

Opinion delivered September 30, 1963

*Spencer & Spencer,* for appellant.

*Brown, Compton & Prewett,* for appellee.

ED. F. McFADDIN, Associate Justice. We are here asked to determine whether the indorsement in question was an unqualified indorsement under the Uniform Negotiable Instruments Law.[1]

In 1954 Lloyd P. Cox and wife executed their note, which in due time was owned by appellee, W. S. Anderson; and he placed on it the following writing:

"State of Arkansas ⎫
  County of Garland ⎰ ss.

"For value received I hereby assign, transfer, set over and convey all of my interest in and to the note on

---

[1] The Uniform Negotiable Instruments Law was adopted in Arkansas by Act 81 of 1913. In 1961 the Arkansas Legislature, by Act No. 185, adopted the Uniform Commercial Code, now contained in Ark. Stat. Ann. §85-1-101 *et seq.* (Addendum 1961); and that Act provides that the Uniform Commercial Code would become effective in Arkansas at midnight December 31, 1961; but that all transactions validly entered into before the effective date, and all rights, duties, and interests flowing from them, would be governed by the laws prior to the adoption of the Uniform Commercial Code. So the present case is not affected by the Uniform Code: we decide this case under the Uniform Negotiable Instruments Law, hereinafter referred to as "UNIL."

the reverse side hereof together with the security therefor, to CRESWELL-KEITH, INC., AN ARKANSAS CORPORATION, TRUSTEE FOR CRESWELL-KEITH MINING TRUST.

"This the 12th day of January, 1957. /s/ W. S. Anderson."

Either by change of corporate name, or other procedure, the appellant, Ouachita Industries, Inc., became the owner of the note; and on February 14, 1961, filed the present suit against W. S. Anderson seeking to hold him liable as an unqualified indorser of the note because of the writing above copied. Anderson filed his demurrer, claiming that the said writing was not equivalent to an unqualified indorsement. The Trial Court sustained the demurrer and dismissed the complaint when the plaintiff refused to plead further.[2] On appeal, the appellant urges one point: "Under the Uniform Negotiable Instruments Law, Effective at the Time of the Indorse-

---

[2] The learned Chancellor delivered a written opinion, from which we copy:

"The Court further finds that the indorsement should be and is interpreted as a limited indorsement, rather than a general indorsement, in that the indorsement states: 'ALL OF MY INTEREST IN AND TO THE NOTE ON THE REVERSE SIDE HEREOF, TOGETHER WITH THE SECURITY THEREFOR, . . .'

"The Court further finds that the language as above quoted, under the decision of the Supreme Court of Arkansas as announced in *Spencer* v. *Halpern*, 62 Ark. 595 and cited in an opinion not reported, 65 Ark. Page 631, and also as announced in 8 Am. Jur. Sec. 46, does constitute a restrictive indorsement. The Court further finds that although the above cited case of *Spencer* v. *Halpern* was decided prior to the adoption by the Arkansas Legislature of the 'Uniform Negotiable Instruments Law,' such adoption did not change the law merchant. The text writers and the decisions of the courts of Arkansas seem to give full force to such language in the indorsement as 'without recourse' and 'all my right, title, and interest.' This principle of restrictive indorsement by the use of such terms as stated was also followed in the case of *Bennett* v. *Semmes*, 287 Fed. 745, as decided by Judge Trieber, District Judge, Eastern District of Arkansas. The opinion having been rendered on March 27, 1923, after the passage of the Uniform Negotiable Instruments Law adopted in Arkansas in 1913. It further appears from the authorities submitted to this Court that the sections of the Uniform Negotiable Instruments Law of Arkansas pertaining to restrictive indorsements, and particularly where the same language is used as was in this present indorsement, 'all my right, title and interest,' are in effect re-enactments of the well established law of the law merchant."

ment, the Indorsement as a Matter of Law was an Unqualified Indorsement.''

The question under consideration turns on whether the holding of this Court in *Spencer* v. *Halpern* (1896), 62 Ark. 595, 37 S. W. 711, 36 L.R.A. 120, was changed by the passage of the Uniform Negotiable Instruments Law, which was Act No. 81 of 1913 (see Ark. Stat. Ann. §68-101 *et seq.* [Repl. 1957]). In *Spencer* v. *Halpern,* there was this indorsement: ''For value received I hereby transfer my interest in the within note to Isaac Halpern. (Signed) Geo. Spencer.'' When the note was unpaid, Halpern sued Spencer on the indorsement; and Spencer pleaded that he was not liable because the indorsement was restricted. This Court held that by the quoted indorsement Spencer avoided the liability of an unqualified indorser under the law merchant. In the opinion, Justice Wood recognized that, under the law merchant, Spencer would be liable as an indorser unless the language he used was sufficient to restrict his liability; and Justice Wood recognized that Mr. Daniels (in his work on Negotiable Instruments) and many adjudicated cases held that such an indorsement as Spencer made was not sufficient to exempt Spencer from liability as an unqualified indorser. But Justice Wood quoted Tiedeman on Commercial Paper, §265:

'' 'The declaration that the payee assigns or transfers all his *right, title and interest* in the paper would seem to limit in a most effective way the rights acquired by the transferee to those which the transferrer had therein, and thus prevent the writing from operating as an indorsement.' ''

Justice Wood then continued:

''Why should we not let the contract mean and have the effect that is plainly expressed by the terms *'my interest'* in their ordinary acceptation? Had the payee intended to be bound as indorser, why use so many words? Had the transferee expected more than the *'interest'* of the transferrer, why did he accept the instrument transferring only his *'interest?'* We must accept

and interpret the completed contract as the parties made it. They have seen proper to express it at length, and have used unambiguous terms. Construing the terms '*my interest*' most strongly against the transferrer, we do not feel authorized to say they mean anything more than simply '*my interest*.' They are clearly terms *of limitation,* when used in an indorsement on a negotiable instrument. Compare *Reynolds* v. *Shaver,* 59 Ark. 299."

We find nothing in the Uniform Negotiable Instruments Law that does other than declare what the law merchant[3] had been on this matter of what is a qualified indorsement. Ark. Stat. Ann. §68-138 (Repl. 1957) (being §38 of the UNIL) reads in part: "A qualified indorsement constitutes the indorser a mere assignor[4] of the title to the instrument. It may be made by adding to the indorser's signature the words 'without recourse' *or any words of similar import.*" (Emphasis supplied.) Ark. Stat. Ann. §68-163 (Repl. 1957) (being §63 of the UNIL) says: "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an indorser, *unless he clearly indicates by appropriate words his intention to be bound in some other capacity.*" (Emphasis supplied.) Ark. Stat. Ann. §68-166 (Repl. 1957) (being §66 of the UNIL) says: "Every indorser who indorses *without qualification,* warrants to all subsequent holders in due course: . . ." that payment will be made by him under circumstances stated in the section. (Emphasis supplied.) In *Spencer*

---

[3] In *Bennett* v. *Semmes,* 287 F. 745, Judge Trieber, United States District Judge for the Eastern District of Arkansas, said that the UNIL was a re-enactment in that case of what the law merchant had been; and in the case at bar, the UNIL was a re-enactment of what the law merchant was on the question here.

[4] The Supreme Court of Utah, in *Johnson* v. *Beickey,* 228 F. 189, clearly stated the distinction between assignment and indorsement:

"'Assignment' and 'indorsement,' as applied to negotiable instruments, are not synonymous terms. An indorsement is not merely a transfer of title, but a new and substantive contract by which the indorser becomes a party to the instrument and liable, on certain conditions, for its payment. An assignment means a transfer of the title. It neither includes nor implies becoming in any way a party to the payment, or responsible for the insolvency or default of the maker."

Even though the Supreme Court of Utah holds against *Spencer* v. *Halpern,* the foregoing discussion of assignment and indorsement is clear and concise.

v. *Halpern, supra,* it was held that an indorsement such as the one here was an indorsement *with qualification* in that the words had a similar import to "without recourse"; and we fail to see wherein the holding in *Spencer* v. *Halpern* was changed by the adoption of the Uniform Negotiable Instruments Law in 1913.

We concede that a majority of the States hold that an indorsement, such as that in *Spencer* v. *Halpern,* and in the case at bar, is not sufficient to constitute a qualified indorsement;[5] but in 8 Am. Jur. p. 254, "Bills and Notes" §546, it is stated that the reasoning in *Spencer* v. *Halpern* is the better reasoning on this point. Here is the language in Am. Jur.; and we have italicized that portion of the text which cites *Spencer* v. *Halpern* in support thereof:

"Indorsement in Form of Assignment.—There is a direct conflict of authority upon the question whether one who transfers an instrument by words purporting only an assignment of the paper is to be held bound in accordance with the contract implied by law from an indorsement in blank. The majority of the courts considering the question have taken the view that the liability of an ordinary indorser is imposed upon one who makes an assignment upon the back of a negotiable instrument; such an assignment, according to this view, is not a qualified or a restrictive indorsement. Accordingly, one who writes and signs on the back of a negotiable instrument an assignment thereof is held liable as an indorser to the same extent as if he had merely indorsed his name without any other words. A reason given for this view is that the so-called 'assignor,' in expressing the assignment, is merely expressing one part of what the law implies from a general indorsement, and that if the person making the assignment wishes to avoid the liability of such an indorser, he should put that wish into words clearly indicating his intention. *The better reasoning, however, would seem to favor the view that the person making an assignment in express terms thereby signifies his intention to do nothing more than assume the liability*

---

[5] See annotations in 2 A.L.R. 216, and in 44 A.L.R. 1353.

*of an assignor or restrictive indorser and that. the assignment should not be held to import the contract of indorsement. In accordance with this view, it has been held that where the holder of commercial paper transfers merely his interest therein, he will not be liable upon the note in case of the maker's failure to pay at maturity."*

The above quotation in Am. Jur. was published in 1937; and certainly the author of the above quoted text had no idea that the Arkansas holding in *Spencer* v. *Halpern* was changed in any way by the 1913 adoption by Arkansas of the UNIL, or else there would not have been the citation of *Spencer* v. *Halpern* as supporting "the better reasoned view."

We therefore conclude that the holding in *Spencer* v. *Halpern* is governing in the case at bar; and that the Trial Court was correct in so holding.

Affirmed.

HARRIS, C. J. and GEORGE ROSE SMITH, J., dissent.

GEORGE ROSE SMITH, J. (dissenting). The question before the court in *Spencer* v. *Halpern,* relied upon by the majority, was not the same as that confronting us today. There the issue was whether an assignment purporting to convey all the transferror's interest in a note amounted to a qualified indorsement at common law. The court held the indorsement to be a qualified one.

In the case at hand we are not concerned with the common law. The statute has greatly sharpened the conception of a qualified indorsement by declaring explicitly that the transferror may use "the words 'without recourse' or any words of similar import." Ark. Stat. Ann. § 68-138 (Repl. 1957). Hence in the case at hand the narrow question is whether the words of the indorsement, "I hereby assign, transfer, set over and convey all my interest in and to the note," are of similar import to the statutory phrase "without recourse." I think this ques-

tion should be answered in the negative, both upon reason and upon authority.

The transferror's real intent is not apt to be open to doubt when the indorsement is prepared by one skilled in the law of commercial paper, such as a banker or a lawyer, for then the draftsman will select whatever statutory language he needs to express his purpose. The ambiguous indorsements, for which today's decision will become a controlling precedent, are those prepared by laymen not well versed in the law of negotiable instruments.

The laity's unfamiliarity with this field of law, however, is not unlimited. Nearly everyone old enough to be dealing with checks and promissory notes knows perfectly well that he can protect himself against liability upon such an instrument by indorsing it "without recourse." Hence in the overwhelming majority of cases the parties, if they really mean to bring about the limited liability that is involved in a qualified indorsement, will accomplish that purpose by indorsing the instrument without recourse.

It follows as a corollary that the parties, whether learned in the law or not, will *not* resort to the cumbersome indorsement now before the court as a deliberate device for achieving a transfer without recourse. Thus it seems to me that as a matter of practical thinking and sound policy the majority are demonstrably mistaken in declaring that the language now before us expresses the same intention as the familiar phrase "without recourse." Nor does the majority's position have any particular equitable appeal. One who assigns a note or check ordinarily receives value; so there is no injustice in holding him liable upon the instrument if it proves to be worthless.

The authorities point to this same conclusion. The decision in *Spencer* v. *Halpern* followed what was the minority rule at common law and what is even more decidedly the minority rule under the N.I.L. The cases were carefully reviewed by the Supreme Court of Ne-

braska in an opinion that refers to the "decisive majority" of the courts that hold such an indorsement to be unqualified and to the "unanimity" that prevails under the N.I.L. *Baldwin-Heckes Co.* v. *Kammerlohr,* 123 Neb. 317, 242 N. W. 661. One may infer that the majority view was also favored by Dean J. S. Waterman, a genuine scholar in the law of Bills and Notes. See Waterman, The Assignment and Guaranty of Promissory Notes, 1 Ark. Law School Bulletin 25.

I think the rule of *Spencer* v. *Halpern* to be unsound. We are not compelled to follow that decision; it was a declaration of the common law rather than an interpretation of the statute. We have recognized the desirability of construing uniform laws in harmony with the decisions in other jurisdictions. *Grauman* v. *Jackson,* 216 Ark. 362, 225 S. W. 2d 678. There is every reason for us now to abandon the minority rule and align ourselves with the majority. It is especially regrettable that this opportunity is being lost, for the language of the Commercial Code, Ark. Stat. Ann. § 85-3-414 (Addendum 1961), is so similar to that of the N.I.L. that today's decision will doubtless apply to the new statute as well as to the old one.

HARRIS, C. J., joins in this dissent.