UNITED STATES of America,
Plaintiff,

v.

The BAPTIST GOLDEN AGE HOME and
Valley Plumbing & Supply Co.,
Defendants,

Marvin Hilton, d/b/a Hilton Furniture
Company, Intervenor.

No. 903.

United States District Court
W. D. Arkansas,
Hot Springs Division.

March 2, 1964.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Ft. Smith, Ark., for plaintiff.

Robert D. Ridgeway, Hot Springs, Ark., for intervenor.

Mitchell & Mitchell, Hot Springs, Ark., for defendant Baptist.

JOHN E. MILLER, Chief Judge.

This is a foreclosure action by the plaintiff, United States, brought for the use and benefit of the Federal Housing Commissioner under 28 U.S.C.A. § 1345. Plaintiff commenced this action April 11, 1963, and the defendant, Baptist Golden Age Home, filed its answer April 26, 1963, together with an offer of compromise which was not accepted by plaintiff. On May 8, 1963, the court entered an order allowing the defendant Baptist 60 days additional time in which to otherwise plead.

On April 11, 1963, the court appointed Frank B. Harper of Hot Springs, Arkansas, receiver of the defendant Baptist. The bond of the receiver, Harper, was filed and the oath administered April 15, 1963.

Plaintiff filed an amendment to its complaint June 19, 1963, adding Valley Plumbing & Supply Company as a defendant.

On July 10, 1963, Marvin Hilton, d/b/a Hilton Furniture Company, filed a motion to intervene as plaintiff, which was granted the same day. The United States Attorney on September 9, 1963, moved the court for an extension of time to file an additional answer or otherwise plead. On September 17, 1963, the plaintiff's answer to the intervention of Marvin Hilton was filed, and on September 25, 1963, the reply by Hilton-to the plaintiff's answer to the intervention was filed.

On October 2, 1963, a pretrial conference was held, at which all answering parties were represented by their respective attorneys. An additional pretrial conference was held December 17, 1963, at which the attorneys for the respective parties were present. No formal pretrial orders were entered, but the plaintiff advised all parties that it desired to file a motion for summary judgment.

Mr. Roy Mitchell, attorney for the defendant Baptist, on January 22, 1964, filed a motion for allowance of attorney's fee. Mr. John M. Lofton, on January 31, 1964, filed a motion for allowance of attorney's fee.

On January 24, 1964, the plaintiff filed its motion for summary judgment accompanied by affidavit. On January 30, 1964, defendant Baptist filed its reply to the plaintiff's motion for summary judgment. On February 3, 1964, response to motion of plaintiff for summary judgment was filed by Marvin Hilton in opposition to the plaintiff's motion for summary judgment, and on February 10, 1964, the intervenor, Hilton, filed his motion for summary judgment, together with affidavits in support thereof.

On February 14, 1964, plaintiff filed its response to the motion of Roy Mitchell for allowance of attorney's fee, together with its response to the motion of John M. Lofton for allowance of attorney's fee. The court will defer action on the motions for attorneys' fees until after the entry of the decree in the instant foreclosure suit.

The case is now before the court on the cross motions for summary judgment. Briefs have been submitted by the parties in support of their respective contentions and have been considered by the court.

The pertinent facts as disclosed by the pleadings, motions and affidavits are not in dispute. The defendant Baptist Golden Age Home is a nonprofit corporation organized and existing under the laws of the State of Arkansas, with its principal place of business at 213 Fountain Street, Hot Springs, Arkansas. On August 18, 1960, the defendant Baptist executed and delivered its deed of trust note in favor of T. J. Bettes Company of Houston, Texas, in the sum of $666,000. The note provided for payment in monthly installments of principal and interest at the rate of 5.25 percent per annum. Defendant executed its deed of trust on the same date in favor of the T. J. Bettes Company, which was recorded August 19, 1960, in Record Book 486, page 467, in the office of the Recorder of Garland County, Arkansas, and provided that in the event any installments be unpaid on the due date of the next maturing installment, the entire indebtedness would become at once due and payable without notice.

On August 24, 1960, T. J. Bettes Company by "assignment of mortgage" assigned all of its interest in the deed of trust and accompanying note to the Worthen Bank and Trust Company of Little Rock, Arkansas. The "assignment of mortgage" was recorded April 24, 1961, in Record Book 496, page 443, in the office of the Recorder of Garland County, Arkansas. On October 1, 1961, at the request of the mortgagor, Worthen Bank & Trust Company executed a modification agreement extending a deferment of principal payments.

The "modification agreement" was recorded July 26, 1962, in Record Book 521, at page 167, in the office of the Recorder of Garland County, Arkansas. On July 25, 1962, Worthen Bank & Trust Com-

pany reassigned its interest in the deed of trust and note to T. J. Bettes Company. This "assignment" was recorded July 26, 1962, in Record Book 521, page 331, in the office of the Recorder of Garland County, Arkansas.

On August 2, 1962, T. J. Bettes Company "assigned" its interest in the deed of trust and note to the Arkansas Teachers Retirement System. This assignment was recorded August 3, 1962, in Record Book 521, at page 641, in the office of the Recorder of Garland County, Arkansas.

The defendant failed to make the installment payment due September 1, 1962, and by reason of such failure defaulted under the terms of the deed of trust prior to the due date of the next installment and continues in default since that date. On February 12, 1963, the Arkansas Teachers Retirement System exercised its option under the provisions of the National Housing Act, and assigned all its interest in the deed of trust and note to the Federal Housing Commissioner and his successor and assigns. This assignment is recorded in Record Book 541, page 22, in the Records of Garland County, Arkansas. In accordance with the provisions of the deed of trust and note, the Federal Housing Commissioner seeks a judgment against the defendant Baptist for the entire outstanding balance of principal and interest due and payable.

In paragraph numbered 12 of the complaint, the plaintiff stated:

"Defendant, The Baptist Golden Age Home, is now indebted to the Plaintiff in the following amounts:

"(a) $660,460.71 of unpaid principal balance as of the date of default;

"(b) $20,226.64 of interest on said principal balance accrued at 5.25% per annum from September 1, 1962; the due date of the last payment made on the Deed of Trust Note and after which no interest has been paid through March 1, 1963."

In its complaint the plaintiff, United States, asserts that it has a lien prior and superior to any other lien or claim against the property described in the deed of trust, and that the encumbered property has a fair market value less than the outstanding indebtedness. Plaintiff prays for the appointment of a receiver, for judgment against the defendant for the sums recited in paragraph 12 quoted above, costs of this action, for an order and decree foreclosing the security instruments and subjecting the property to sale, and for a deficiency judgment in such an amount as the court may find proper in the event the sale price of the property is not sufficient to satisfy plaintiff's judgment.

The defendant, Baptist Golden Age Home, in its answer denied the allegations and amounts set out in paragraph 12 of the complaint, and alleged:

"That the defendant paid the sum of $4,226.00 to the T. J. Bettes Company by check No. 958, dated January 11, 1963, to apply on defendant's note and that the defendant has not received credit for the payment.

"That the defendant, The Baptist Golden Age Home, paid the Federal Housing Administration, Washington, D. C., the sum of $4,426.00 by check No. 982, dated February 20, 1963, to apply on said note; that the defendant has not received credit for this payment.

"That the defendant, The Baptist Golden Age Home, paid the Federal Housing Administration, Washington, D. C., the sum of $5,226.00 by check No. 1019 dated March 18, 1963, to apply on said note and that the defendant has not received credit for said payment."

Attached to the defendant's answer are photostatic copies of checks Nos. 958, 982 and 1019.

The defendant in paragraph 6 of its answer admitted that the plaintiff has a lien prior and superior to any other lien and claim against the real property described in the deed of trust, and a lien prior and superior to any other lien or claim of the interest or equity in any

and all personal property owned by the defendant and used in the operation of the Baptist Golden Age Home, but defendant denied plaintiff has any claim to the furniture, furnishings and carpet supplied by the intervenor Hilton.

In paragraph 7 of defendant's answer, it admitted that the deed of trust and note provided that in an action to foreclose, the parties shall be entitled to the appointment of a receiver, but it emphatically denied that the encumbered property has a fair market value less than the outstanding indebtedness.

In the plaintiff's amendment to its complaint, it stated that the lien of Valley Plumbing & Supply Company in the sum of $153.60, recorded February 19, 1962, is inferior to that of the United States, and prayed that any interest of Valley Plumbing & Supply Company be declared inferior to that of the plaintiff. Valley Plumbing & Supply Company, although duly served, has not answered and is in default.

The intervenor, Marvin Hilton, d/b/a Hilton Furniture Company, stated in his motion to intervene and complaint that he is in the furniture business in Hot Springs, Arkansas; that he is the owner of certain personal property now held subject to the control of this court in the foreclosure action filed by the plaintiff, United States. The intervenor, sometime during the first six months of 1962, sold and delivered under what the intervenor described as a "conditional sales contract note" 821 yards of nylon carpet and padding, furniture for the manager's apartment, and other items of furniture at a purchase price of $9,400.75 to the defendant Baptist. On June 18, 1962, the defendant, by and through its President, John B. Lowrey, and the then manager, Delmer Cook, executed and delivered to the intervenor, Marvin Hilton, a conditional sales contract in the sum of $9,-400.75, due and payable six months after that date bearing interest at the rate of 10 percent per annum. Intervenor, Hilton, asserted in his answer that the conditional sales contract granted him a lien on all other furniture in the Baptist Golden Age Home as additional security for the payment of the conditional sales contract note with the understanding and agreement that the title to the property sold by him was to remain in the intervenor until the note was fully paid with interest. The intervenor in his complaint stated that he had made numerous demands upon the defendant for payment of said note, but no part has been paid and the entire amount is due and remains unpaid.

Intervenor asserted in his complaint that his claim under the "conditional sales note" is a prior lien on the carpet, pad and furniture supplied by him, and therefore he is entitled to recover said property for the purpose of resale to apply on the note. Intervenor prayed for a judgment against the defendant for any deficiency arising after said sale, or, in the alternative, that he be granted a judgment for $9,400.75, plus 10 percent attorney's fee, against the plaintiff, United States, if it, the plaintiff, retains possession of the property supplied by the intervenor.

Plaintiff on February 4, 1964, in a letter addressed to the court, with copies to the attorneys for the defendant and the intervenor, amended the principal unpaid balance to include credit for the January 25, 1963, payment of $4,226.00; the February 28, 1963, payment of $4,-426.00; and the March 22, 1963, payment of $5,226.00. The plaintiff asserted that on August 1, 1963, the principal unpaid balance was $660,460.71, with interest in the amount of $19,599.12.

The plaintiff contends as to the claim of the intervenor, Hilton that a vendor of personal property under the Uniform Commercial Code, Ark.Stats. 85–1–201 and 85–2–401, is limited to the retention of a security interest. It further contends that the security interest of intervenor has not been perfected in that it was not filed in the office of the Circuit Clerk of Garland County or the Secretary of State of Arkansas, as required by the Uniform Commercial Code, Title 85 of the Arkansas Statutes. It contends that an unperfected security interest is subordinate to

the rights of persons entitled to priority under Ark.Stat. 85–9–312. It further contends that its perfected lien on the real estate includes all personal property then on or thereafter acquired by the Baptist Golden Age Home by virtue of a provision in the deed of trust and note which was recorded August 18, 1960. The deed of trust and note containing the after-acquired property clause encumbers the defendant Baptist's property as follows:

[Real property description omitted.]

"Together with all buildings and improvements of every kind and description now or hereafter erected or placed thereon, and all fixtures, including but not limited to all gas and electric fixtures, engines and machinery, radiators, heaters, furnaces, heating, laundry, air-conditioning and incinerating equipment, steam and hot water boilers, stoves, ranges, elevators and motors, bathtubs, sinks, water closets, basins, pipes, faucets and other plumbing and heating fixtures, mantels, refrigerating plant and refrigerators, whether mechanical or otherwise, cooking apparatus and appurtenances, furniture, shades, awnings, screens, blinds and other furnishings; and

"All articles of personal property owned by the Grantor and now or hereafter attached to or used in and about the building or buildings now erected or hereafter to be erected on the lands herein described which are necessary to the complete and comfortable use and occupancy of such building or buildings for the purposes for which they were or are to be erected, including all goods and chattels and personal property as are ever used or furnished in operating a building or the activities conducted therein, similar to the one herein described or referred to, and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are, or shall be attached to said building or buildings in any manner; together with all building materials and equipment now or hereafter delivered to said premises and intended to be installed therein. It is hereby agreed that to the extent permitted by law all of the foregoing property and fixtures are to be deemed and held to be a part of and affixed to the realty."

The plaintiff further contends that even assuming the intervenor has a perfected security interest, which plaintiff contends intervenor does not have, that the plaintiff is entitled to a priority under the Uniform Commercial Code, Ark. Stats. 85–9–312 and 85–9–302.

The defendant, Baptist Golden Age Home, contends that the plaintiff did not acquire any interest by reason of the deed of trust to the after-acquired furniture and furnishings which were not on the property at the time of the execution of the deed of trust. It further contends that it, Baptist, has never acquired any title to the after-acquired furniture and furnishings, and that it has not paid for the furniture, furnishings and carpet. It further contends that its "purchases" from the intervenor could not have become part of the security of the plaintiff under the deed of trust until title vested in the defendant, which it contends has never occurred.

Marvin Hilton on July 23, 1962, executed a "lien waiver," which the defendant contends did not convey title to the furniture, furnishings and carpeting, and the plaintiff does not contend that it does. The intervenor, Hilton, contends that a "sale" consists of the passing of title from the seller to the buyer for a price. He asserts that the title to the furniture, furnishings and carpet did not pass under the conditional sales contract and that the Baptist Golden Age Home had bare possession and not title, and thus no "sale" has been consummated. He further contends that as there were no payments made on the note, no title could pass until such time as the consideration would be paid.

The defendant Baptist contends that since it acquired no title to the property

supplied to it by the intervenor by virtue of its failure to pay any of the consideration, the plaintiff, United States, thus acquired no interest in this property because a mortgagee may acquire only such title as the mortgagor had or subsequently acquires. As heretofore stated, defendant Baptist in its answer admits plaintiff is entitled to foreclosure as to the real property owned by the defendant Baptist and the only question before the court relates to the rights of the parties to the furniture, furnishings and carpeting supplied by intervenor Hilton.

The 63rd General Assembly of Arkansas, by Act 185 of 1961, adopted the Uniform Commercial Code. The Uniform Commercial Code, Title 85 of the Arkansas Statutes, became effective at midnight on December 31, 1961.[1]

The transactions between intervenor Hilton and defendant Baptist having occurred after the effective date of the Uniform Commercial Code are, of course, controlled by it. At the outset the court is faced with the application of Article 9 (Secured Transactions) of the Uniform Commercial Code, which is Chapter 9 in Title 85 of the Arkansas Statutes, without benefit of construction and application by the highest court of the State of Arkansas. The latest edition of Shepard's Arkansas Citations, December 1963, which supplements the 1945 bound volume, discloses only three decisions by the Supreme Court of Arkansas which either cite or construe the Uniform Commercial Code in Arkansas.[2]

Two federal cases are cited in the current Shepard's Arkansas Supplement which contain references to the Uniform Commercial code.[3] In Re Freeman, (3 Cir. 1961) 294 F.2d 126, in footnote 8 at page 132, lists Arkansas as having adopted the Uniform Commercial Code. In James Talcott, Inc. v. Associates Discount Corp., (8 Cir. 1962) 302 F.2d 443, the court stated at page 446:

"Arkansas law, of course, governs. Until the adoption by Arkansas of the Uniform Commercial Code, Acts 1961, No. 185, now Arkansas Statutes, Title 85, effective at midnight on December 31, 1961, there was no general provision for the recording in Arkansas of a conditional sale contract; also the Arkansas Motor Vehicle Registration Law, particularly §§ 75–160 and 75–161 of Arkansas Statutes, adopted in 1949, has no application to construction equipment such as the dragline here. Securities Investment Co. of St. Louis v. Williams, E.D.Ark., 1960, 190 F. Supp. 261, 265, footnote 1. There is no factor, therefore, of any record notice in this case. Further, because the pertinent events all took place prior to 1962, because Arkansas had not adopted the Uniform Conditional Sales Act, and because its version of the Uniform Sales Act had been made specifically inapplicable to conditional sales, Arkansas Statutes § 68–1479 (now repealed by the Uniform Commercial Code); * * *."

1. Ark.Stat. 85–1–101, Compiler's Notes, effective date: "This Act shall become effective at midnight on December 31st 1961."

2. Miles v. Gordon, 234 Ark. 525, 353 S.W. 2d 157 (1962), (citing Ark.Stat. 85–3–105 from the Commercial Paper chapter of the Uniform Commercial Code in Arkansas, which is not applicable here); United States v. Pioneer American Insurance Co., 235 Ark. 267, 357 S.W.2d 653 (1962), (citing Ark.Stat. 85–3–106 of the Uniform Commercial Code in Arkansas from the Commercial Paper chapter, which is not applicable here); Cooper

v. Cherokee Village Development Co., 236 Ark. 37, 364 S.W.2d 158 (1963), (citing Ark.Stat. 85–1–101, with the statement at page 162 of 364 S.W.2d that the Uniform Commercial Code in Arkansas does not apply to usury cases). None of these cite Chapter 9 of Title 85 of the Arkansas Statutes which is controlling in the instant case.

3. The only other citation contained in the latest Shepard supplement is 216 Ark. Law Review, No. 1, Winter 1961–62, containing a report of the "Institute on Uniform Commercial Code."

The court has made a case-by-case examination of all reported opinions of the Supreme Court of Arkansas from January 1, 1962, through the opinions delivered February 10, 1964, reported in 237 Arkansas Advance Sheets, No. 17. This examination discloses three opinions of the Supreme Court of Arkansas, Archer v. Bucy, 235 Ark. 244, 357 S.W.2d 636 (1962); Ouachita Industries v. Anderson, 236 Ark. 929, 370 S.W.2d 811 (1963); and Hartsook v. Owens, 236 Ark. 790, 791, 370 S.W.2d 69 (1963); which are not as yet contained in the present supplement to Shepard's Citations. Ouachita Industries v. Anderson, supra, 236 Ark. at page 929, in footnote 1, 370 S.W.2d 811, stated that the transaction in question in that case occurred prior to the adoption of the Uniform Commercial Code, and therefore all rights, duties and interest would be governed by the laws of the Uniform Negotiable Instruments Act. Archer v. Bucy, 235 Ark. at page 244, in footnote 1, 357 S.W.2d 636, also stated that the litigation was determined under law existing prior to January 1, 1962, when the Uniform Commercial Code became effective in Arkansas. In Hartsook v. Owens, supra, Ark.Stat. 85-4-404 is cited from the chapter on bank deposits and collections, which is not applicable here.

The intervenor contends that it supplied the chattels in question under a "conditional sales contract." The Uniform Commercial Code, in Chapter 9 entitled "Secured Transactions" in Ark. Stat. 85-9-102, states:

"(1) Except as otherwise provided in Section 9-103 [§ 85-9-103 on multiple state transactions and in Section 9-104 [§ 85-9-104] on excluded transactions, this Article [chapter] applies so far as concerns any personal property and fixtures within the jurisdiction of this state

"(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; and also

"(b) to any sale of accounts, contract rights or chattel paper.

"(2) This Article [chapter] applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security. This Article [chapter] does not apply to statutory liens except as provided in Section 9-310 [§ 85-9-310].

"(3) The application of this Article [chapter] to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this Article [chapter] does not apply."

This section, Ark.Stat. 85-9-102, relieves the court of the burden of construing instruments as either chattel mortgages or conditional sales, which was a critical factor to consider in security instruments prior to the adoption of the Uniform Commercial Code. This section specifically provides that Article 9 of the Uniform Commercial Code, which was enacted as Chapter 9 of Title 85 of the Arkansas Statutes, applies to conditional sales contracts and chattel mortgages as well as other secured instruments enumerated in Section 2 of Ark. Stat. 85-9-102, recited above. The exclusions from the Secured Transactions Chapter are recited in Ark.Stat. 85-9-104.[4] In the Comment to Ark.Stat.

4. "This Article [chapter] does not apply
  "(a) to a security interest subject to any statute of the United States such as the Ship Mortgage Act, 1920, to the extent that such statute governs the rights of parties to and third

parties affected by transactions in particular types of property; or
  "(b) to a landlord's lien, or
  "(c) to a lien given by statute or other rule of law for services or materials except as provided in Section

85-9-102 the following statements are made in regard to conditional sales contracts:

"2. The Article does not in terms abolish existing security devices. The conditional sale or bailment-lease for example is not prohibited; but even though it is used, the rules of this Article govern."

Thus, from a reading of the above cited comment, as well as the statute proper, there is no question that the rights of Hilton Furniture Company are governed and controlled by the Uniform Commercial Code.

The next question to be determined is what specific provisions of Chapter 9, "Secured Transactions," of Title 85 apply in the instant case. In the consideration of this question the court must determine the type of chattels which are involved here. Ark.Stat. 85-9-109 establishes the following four classifications of goods [5] which are subject to the Secured Transactions Chapter of the Uniform Commercial Code:

"Goods are

"(1) 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes;

"(2) 'equipment' if they are used or bought for use primarily in business (including farming or a profession) or by a debtor who is a non-profit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products or consumer goods;

"(3) 'farm products' if they are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states (such as ginned cotton, wool-clip, maple syrup, milk and eggs), and if they are in the possession of a debtor engaged in raising, fattening, grazing or other farming operations. If goods are farm products they are neither equipment nor inventory;

"(4) 'inventory' if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. In-

---

9-310 [§ 85-9-310] on priority of such liens; or

"(d) to a transfer of a claim for wages, salary or other compensation of an employee; or

"(e) to an equipment trust covering railway rolling stock; or

"(f) to a sale of accounts, contract rights or chattel papers as part of a sale of the business out of which they arose, or an assignment of accounts, contract rights or chattel paper which is for the purpose of collection only, or a transfer of a contract right to an assignee who is also to do the performance under the contract; or

"(g) to a transfer of an interest or claim in or under any policy of insurance; or

"(h) to a right represented by a judgment; or

"(i) to any right of set-off; or

"(j) except to the extent that provision is made for fixtures in Section 9-313 [§ 85-9-313], to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder; or

"(k) to a transfer in whole or in part of any of the following; any claim arising out of tort; any deposit, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization."

█ It is obvious that the transaction between the defendant and the Hilton Furniture Company does not come within this exclusion provision.

5. Ark.Stat. 85-9-105 defines "goods" as:
"(f) 'Goods' includes all things which are movable at the time the security interest attaches or which are fixtures (Section 9-313 [§ 85-9-313]), but does not include money, documents, instruments, accounts, chattel paper, general intangibles, contract rights and other things in action. 'Goods' also include the unborn young of animals and growing crops;"

ventory of a person is not to be classified as his equipment."

The comment following this section further states that the principal definition of equipment is a negative one, that is, goods used in a business, including farm or profession, which are not inventory and are not farm products and are not consumer goods. Thus, under 85-9-109, Section (2) recited above, the furniture, furnishings and carpeting sold by Hilton Furniture Company to the Baptist Golden Age Home are "equipment" as they were used or bought for use primarily in business. Section (2) also lists such goods as equipment if they are used or bought by a nonprofit organization, such as the defendant Baptist Golden Age Home. Under the last proviso of Section (2) the goods are equipment as they are not included within the definition of inventory, farm products or consumer goods.

Ark.Stat. 85-9-203 states the following with respect to enforceability of a security interest [6] in the types of collateral [7] described in Section 85-9-109:

"Subject to the provisions of Section 4-208 [§ 85-4-208] on the security interest of a collecting bank and Section 9-113 [§ 85-9-113] on a security interest arising under the Article on Sales [§§ 85-2-101—85-2-725], a security interest is not enforceable against the debtor or third parties unless

"(a) the collateral is in the possession of the secured party; or

"(b) the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops or oil, gas or minerals to be extracted or timber to be cut, a description of the land concerned. In describing collateral, the word 'proceeds' is sufficient without further description to cover proceeds of any character."

The comment to this section states that the only requirements necessary for an enforceable non-possessory "security interest" against the debtor are (a) a writing; (b) the debtor's signature; and (c) a description [8] of the collateral or kinds of collateral. To be effective as to third parties the required writing is governed by Ark.Stat. 85-9-402:

"(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating

---

**6.** Ark.Stat. 85-1-201, Section (37):
" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (Section 2-401 [§ 85-2-401]) is limited in effect to a reservation of a 'security interest'. The term also includes any interest of a buyer of accounts, chattel paper, or contract rights which is subject to Article 9 [§§ 85-9-101—85-9-507]. * * * "
Ark.Stat. 85-9-107:
"A security interest is a 'purchase money security interest' to the extent that it is
"(a) taken or retained by the seller of the collateral to secure all or part of its price; or
"(b) taken by a person who by making advances or incurring an obligation

gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used."

**7.** Collateral is defined in Ark.Stat. 85-9-105 as:
" 'Collateral' means the property subject to a security interest, and includes accounts, contract rights and chattel paper which have been sold;"
Security agreement is defined as:
" 'Security agreement' means an agreement which creates or provides for a security interest;"

**8.** Ark.Stat. 85-9-110:
"For the purposes of this Article [chapter] any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described.

the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown or goods which are or are to become fixtures, the statement must also contains a description of the real estate concerned. *A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties.* [Emphasis added.]

"(2) A financing statement which otherwise complies with subsection (1) is sufficient although it is signed only by the secured party when it is filed to perfect a security interest in

"(a) collateral already subject to a security interest in another jurisdiction when it is brought into this state. Such a financing statement must state that the collateral was brought into this state under such circumstances.

"(b) proceeds under Section 9–306 [§ 85–9–306] if the security interest in the original collateral was perfected. Such a financing statement must describe the original collateral.

\* \* \* \* \*

"(4) The term 'financing statement' as used in this Article [chapter] means the original financing statement and any amendment but if any amendment adds collateral, it is effective as to the added collateral

only from the filing date of the amendment.

"(5) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

When goods subject to a "security interest" are placed in the debtor's possession, the Uniform Commercial Code, Ark.Stat. 85–9–302, requires certain filings to perfect[9] the security interest as to other creditors and third parties:

"(1) A financing statement must be filed to perfect all security interests except the following:

"(a) a security interest in collateral in possession of the secured party under Section 9–305 [§ 85–9–305];

"(b) a security interest temporarily perfected in instruments or documents without delivery under Section 9–304 [§ 85–9–304] or in proceeds for a 10 day period under Section 9–306 [§ 85–9–306];

"(c) a purchase money security interest in farm equipment having a purchase price not in excess of $2,500; but filing is required for a fixture under Section 9–313 [§ 85–9–313] or for a motor vehicle required to be licensed;

"(d) a purchase money security interest in consumer goods; but filing is required for a fixture under Section 9–313 [§ 85–9–313] or for a motor vehicle required to be licensed;

"(e) an assignment of accounts or contract rights which does not

9. Ark.Stat. 85–9–303, Section (1):
"A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Such steps are specified in Sections 9–302, 9–304, 9–305 and 9–306 [§§ 85–9–302, 85–9–304—85–9–306]. If such steps are taken before the security interest attaches, it is perfected at the time when it attaches."

Comment 1 to 85–9–303 states:
"The term 'attach' is used in this Article to describe the point at which property becomes subject to a security interest. The requisites for attachment are stated in Section 9–204. When it attaches a security interest may be either perfected or unperfected: 'Perfected' means that the secured party has taken all the steps required by this Article as specified in the several sections listed in subsection (1)."

alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor;

"(f) a security interest of a collecting bank (Section 4–208 [§ 85–4–208]) or arising under the Article on Sales (see Section 9–113 [§ 85–9–113]) or covered in subsection (3) of this section.

"(2) If a secured party assigns a perfected security interest, no filing under this Article [chapter] is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor.

"(3) The filing provisions of this Article [chapter] do not apply to a security interest in property subject to a statute

"(a) of the United States which provides for a national registration or filing of all security interests in such property; or

"(b) of this state which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property.

"(4) A security interest in property covered by a statute described in subsection (3) can be perfected only by registration or filing under that statute or by indication of the security interest on a certificate of title or a duplicate thereof by a public official."

An examination of the above recited section discloses that the security interest in the collateral, which is the subject of this dispute, is not excluded from the filing requirements. Ark.Stat. 85–9–401 states the places of filing as:

"(1) The proper place to file in order to perfect a security interest is as follows:

"(a) when the collateral is equipment used in farming operations, or farm products, or accounts, contract rights or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods, then in the office of the Clerk of the Circuit Court and Ex-Officio Recorder of the county where the debtor resides, or if the debtor is not a resident of this state, then in the office of the Clerk of the Circuit Court and Ex-Officio Recorder of the county in which the goods are kept;

"(b) when the collateral is goods which at the time the security interest attaches are or are to become fixtures, then in the office where a mortgage on the real estate concerned would be filed or recorded;

"(c) in all other cases, in the office of the Secretary of State and in addition, if the debtor has a place of business in only one county of this state, also in the office of the Clerk of the Circuit Court and Ex-Officio Recorder of such county, or, if the debtor has no place of business in this state, but resides in the state, also in the office of the Clerk of the Circuit Court and Ex-Officio Recorder of the county in which he resides. The Secretary of State is authorized and directed to employ one [1] additional clerk to carry out the duties of that office under this Act.

"(2) A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this Article [chapter] and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

"(3) A filing which is made in the proper place in this state continues effective even though the debtor's residence or place of business or the

location of the collateral or its use, whichever controlled in the original filing, is thereafter changed.

"(4) If collateral is brought into this state from another jurisdiction, the rules stated in Section 9–103 [§ 85–9–103] determine whether filing is necessary in this state."

█ It is apparent that section (1) (c) of the above recited statute was applicable to the instant transaction. The pleadings, motions and affidavits disclose that the "security interest" of Hilton Furniture Company was not filed in the office of the Secretary of State or anywhere else. Therefore, Hilton has an unperfected security interest under the Uniform Commercial Code. In Joy Manufacturing Co. v. Brooks, (S.D.W.Va.1963) 224 F.Supp. 537, the court makes the following statement in regard to the filing requirements under the Uniform Conditional Sales Act at page 541, which, because of the similarity between the two acts, is applicable here:

" * * *, the duty rests upon the seller to select the proper recording district, and upon his failure to ascertain or select the proper district, it is the seller rather than innocent purchasers or creditors protected by the Act who must suffer the consequences of this failure."

It is not disputed that the security interest that was created by the deed of trust containing the after-acquired property clause was perfected when it was filed in the county in which the real property was located prior to the adoption of the Uniform Commercial Code.

Ark.Stat. 85–9–312 sets our priorities [10] among conflicting security interest in the same collateral. Section (4) provides "[a] purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is per-

fected at the time the debtor receives possession of the collateral or within ten (10) days thereafter." This section is determinative of the conflicting rights and duties in the instant case. This statute also gives a grace period of 10 days after the delivery of the collateral in which the security interest could have been perfected. As heretofore stated, there was no filing at any time of the "purchase money security interest" as is required by the Uniform Commercial Code, Ark.Stat. 85–9–401, to perfect the "security interest" as against third parties.

█ The carpeting furnished by Hilton is capable of being construed a fixture. Under Ark.Stat. 85–9–313 a purchase money security interest in equipment which becomes "fixtures" must meet the filing requirements as recited above in Ark.Stat. 85–9–401, Sec. (1) (b), to take priority over prior encumbrances of the real estate.

Thus the court is of the opinion that regardless of the label or name given to the "security interest" of Hilton, under the Uniform Commercial Code in Arkansas his "security interest" did not meet the filing requirements. The controlling sections cited above convince the court that, as between conflicting security interests in the same collateral, the perfected security interest takes precedent over the unperfected security interest by virtue of the priority section. Had Hilton filed his security interest with the required signatures of both the seller and buyer-debtor, at the time of the delivery of the equipment, or even within ten days after, he would have perfected his security interest and would have been entitled to a priority in the equipment superior to the encumbrance in favor of the plaintiff, United States, created by the deed of trust containing the after-acquired property clause, executed and filed prior to the transaction between

---

10. "85–9–301. Persons who take priority over unperfected security interest—'Lien creditor.'—

"(1) Except as otherwise provided in subsection 2, an unperfected security interest is subordinate to the rights of

"(a) persons entitled to priority under Section 9–312 [§ 85–9–312];"

**904**

Hilton and the defendant Baptist Golden Age Home.

Therefore, a decree is being entered today in accordance with the above granting plaintiff United States' motion for summary judgment and denying defendant Baptist's motion for summary judgment; dismissing the complaint of the intervenor Hilton against the United States; granting intervenor Hilton judgment against defendant Baptist on its claim in the sum of $9,400.75, together with 10 percent attorney's fee, said judgment lien of intervenor Hilton against defendant Baptist to be inferior to prior lien, claim and judgment in favor of plaintiff United States against defendant Baptist Golden Age Home.